## UTAH HOTEL CO. v. PUBLIC UTILITIES COMMIS-SION OF UTAH et al.

No. 3723.   Decided January 27, 1922.   (204 Pac. 511.)

1.  COURTS—DECISION AS TO FIXING RATES FOR PUBLIC UTILITY SERV-
    ICE ADHERED TO UNDER RULE OF STARE DECISIS.   Decisions of
    this court adhered to under the rule of stare decisis, as having
    determined that in fixing rates for public utility service under
    the Public Utilities Act the Commission is not controlled by
    antecedent contracts, but can disregard them if in conflict with
    what it finds to be a reasonable rate under the conditions ex-
    isting at the time of the investigation; and that thereby there
    is no impairment of obligations of contract or deprivation of
    property without due process.[1]

2.  PUBLIC SERVICE COMMISSIONS—QUESTION OF JURISDICTION OF
    COMMISSION NOT RAISED BY PLEADINGS OR ARGUMENT RESERVED.
    On certiorari by one furnished service by a power company,

[1] *Salt Lake City* v. *Utah Light & Traction Co.*, 52 Utah, 210,
173 Pac. 556, 3 A. L. R. 715; *Union Portland Cement Co.* v. *Public
Utilities Commission of Utah*, 56 Utah 175, 189 Pac. 593; *Murray
City* v. *Utah Light & Traction Co.*, 56 Utah 437, 191 Pac. 421;
*U. S. Smelting Ref. & M. Co.* v. *Utah Power & Light Co.*, 58 Utah
168, 197 Pac. 902; *Utah Copper Co.* v. *Public Utilities Commission*,
59 Utah 191, 203 Pac. 627.

under a long time contract at a uniform rate, to review proceedings of the Public Utilities Commission on application of said company to increase its rates, the question of power of the Commission, on placing plaintiff on the standard schedule of rates, to allow it a credit on account of what it by virtue of the contract had paid in excess of that paid by other consumers of the same class, not having been raised by the pleadings or on the argument, will be reserved.

3.  PUBLIC SERVICE COMMISSIONS—SHOULD MAKE RATE TO BE PAID DEFINITE AND CERTAIN. The Public Utilities Commission in placing a public utilities service customer on the standard schedule of rates, notwithstanding a long time contract, should make an express finding as to whether the service is to be furnished at a wholesale price, or at least make the rate to be paid by such customer definite and certain.

Original certiorari by the Utah Hotel Company to review an order of the Public Utilities Commission of Utah on application of the Utah Power & Light Company to increase rates.

ORDER AFFIRMED, except as to a question reserved, and CAUSE REMANDED.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for plaintiff.

*Harvey Cluff,* Atty. Gen., *W. Hal Farr,* Asst. Atty. Gen., and *John F. MacLane* and *C. C. Parsons,* both of Salt Lake City, for defendants.

THURMAN, J.

This is a proceeding in certiorari, under the Public Utilities Act (Comp. Laws, § 4834), to review certain proceedings of the defendant Commission in the matter of the application of the defendant power company to increase its steam service rates.

. The material facts are that plaintiff for several years last past has been engaged in the hotel business in Salt Lake City,

and prior to April 1, 1916, was also engaged in generating light and heat for its own use and retailing the surplus to affiliated buildings and interests. . During all of said time the defendant power company was a public service corporation engaged in the business of manufacturing, vending, and distributing to the public electricity, electrical energy and steam for heat, light and power.

On April 1, 1916, the plaintiff and power company entered into two written agreements, as parts of the same transaction, by which the plaintiff agreed to sell to the power company its plant, equipment, and property theretofore used in connection with its business of generating light and heat, for a consideration of $214,300, payable in equal annual installments, covering a period of 15 years. It was agreed that the power company might anticipate the payment of any installment, and also that the plaintiff might declare the contract forfeited on the happening of certain contingencies enumerated therein. In the event of forfeiture the title and possession of the property was to revert to the plaintiff.

In the second agreement the power company agreed to deliver to plaintiff, for its own use and for certain of its customers, electric energy and steam heat for certain purposes at "wholesale," up to a certain amount, for the flat sum of $55,000 per annum, payable in equal monthly installments. The two contracts covered the same period of time, were interdependent, and neither would have been executed without the other. They are hereafter referred to as one contract. In pursuance thereof the power company entered into possession of the property, and both parties, except as hereinafter stated, have complied strictly with the terms of the agreement.

On April 6, 1921, the power company, by its application filed with the defendant Commission, asked for an increase of rates for its steam-heating service in an amount greatly in excess of the contract rate agreed upon by the parties. Plaintiff protested said application, and in answer thereto set up and relied upon said agreement, contending that it was of such a nature and the consideration therefor was such as

to bring the contract within the terms of the proviso to section 4787, subd. 3, Comp. Laws Utah 1917, which provides, among other things, that nothing in the act shall be construed to prevent the carrying out of contracts for public utility service theretofore made, "founded upon adequate consideration and lawful when made."

After considering the application of the power company, the protest and answer of the plaintiff thereto, and evidence and arguments in support of the respective contentions of the parties, the Commission arrived at the conclusion that the contract relied on by plaintiff was valid when made, and was supported by a lawful consideration, but that the Commission was not bound by the date of the contract in determining the adequacy of the consideration, but might consider the question of adequacy as of the date when the hearing was had in 1921. Considering the matter from that point of view, the Commission concluded that the consideration was inadequate, and for that reason held that the contract was discriminatory and preferential. Plaintiff was therefore placed upon the standard schedule for light, heat, and power, but the Commission, after investigating the value of what it termed a special consideration paid by the plaintiff in excess of that paid by the public generally, allowed plaintiff an annual credit throughout the life of the contract in the sum of $5,683.41.

In the foregoing brief statement of the facts we have omitted as immaterial many details; our purpose being to simplify the questions to be determined by the court. Plaintiff applied for a rehearing before the Commission, and the application was denied. As stated in the beginning, the case is before us on a writ of review.

Plaintiff's principal contention is that the contract between it and the defendant company, entered into April 1, 1916, whereby defendant agreed to supply plaintiff with electrical energy and steam heat during the life of the contract for a flat sum per annum, was founded upon an adequate consideration and lawful when made; that the rate fixed by the Commission for steam heat service and which the plaintiff is

now required to pay is more than double the rate agreed upon by plaintiff and defendant, and that any interpretation of the statute which undertakes to justify such increase renders the statute obnoxious to both the federal and state Constitutions, in that it impairs the obligations of a contract and deprives plaintiff of its property without due process of law.

The defendant power company's reply to this contention is best stated in its brief filed in the case:

"There is no question that the contracts between the Utah Hotel Company and the Utah Power & Light Company were valid when made, and were based upon an adequate consideration as that term is defined and established by legal decisions extending from time immemorial to the present date, but these decisions were applied to contracts between individuals in which the state or society had no concern. The basis of the Public Utilities Act is the regulation of utility service in the interest of society as a whole, and is entirely in derogation of purely private rights, secured by contract or otherwise, of individual members of society whenever such rights are in conflict with the major public interest. It is in the light of this controlling purpose of the law that all of its provisions are to be construed, and when it exempts, or rather permits the Commission to exempt, from the application of the standard rule of uniformity of rates and service, in accordance with regularly filed and published schedules, 'contracts heretofore made based upon adequate consideration and valid when made,' the application of such exemption is to be construed in the light of the interest of the public in securing service, and not in the light of private interests of either of the contracting parties."

In the same connection defendant contends that the question before the court was authoritatively settled by the decision of this court in *U. S. Smelting, Ref. & M. Co.* v. *Utah Power & Light Co.*, 58 Utah 168, 197 Pac. 902. The decision in that case has acquired a unique distinction in the case at bar, in that both parties quote excerpts from it and profess to rely on the doctrine therein enunciated in support of their respective contentions. The plaintiff in the instant case was also one of the plaintiffs in the case referred to, and defendant power company now makes the point that the questions involved in the present case are res adjudicata. Whatever merit there may be in this contention, in view of the fact that the Commission expressly reserved the plaintiff's case for

further consideration, we are not inclined to enter upon a close investigation to determine whether or not the particular questions involved were either expressly or impliedly reserved. It is of far more consequence to the parties litigant and to the people of the commonwealth that the principal question presented here be determined on its merits, especially if it be found, as contended by defendant, that the rule of stare decisis applies. If the questions involved have been heretofore adjudicated and determined by decisions of this court, such decision should be loyally adhered to, or for cogent reasons be overruled and a different rule announced for cases of this kind. The paramount question therefore is, Are the issues involved in the case at bar authoritatively settled by former decisions of this court? The cases referred to are as follows: *Salt Lake City* v. *Utah Light & Traction Co.,* 52 Utah, 210, 173 Pac. 556, 3 A. L. R. 715; *Union Portland Cement Co.* v. *Public Utilities Commission of Utah,* 56 Utah, 175, 189 Pac. 593; *Murray City* v. *Utah Light & Traction Co.,* 56 Utah, 437, 191 Pac. 421; *U. S. Smelting, Ref. & M. Co.* v. *Utah Power & Light Co.,* supra, and *Utah Copper Co.* v. *Public Utilities Commission,* 59 Utah, 191, 203 Pac. 627. These cases were decided in the order above named. The last case cited has just been forwarded to the publisher. It will not be necessary to review any of the cases at great length except the *Smelting Company Case,* relied on for certain purposes by both plaintiff and defendant. A brief reference to the other cases will be sufficient.

In *Salt Lake City* v. *Utah Light & Traction Co.,* supra, the defendant owning and operating a street railway system in Salt Lake City and vicinity applied to the Public Utilities Commission for an increase of fares for transportation on its railway system for the alleged purpose of meeting the increased costs and expenses of operating its railway. A hearing was had before the Commission, and evidence was taken both for and against the application. The Commission granted the application in part, and authorized the defendant to raise its fares in certain particulars. The case came before this court on a writ of review under the Public Util-

ities Act which provides for that form of procedure. The principal question involved was the power of the Commission to set aside and annul certain contracts between plaintiffs and defendant in the form of franchise ordinances. The holding of the court is clearly reflected in the first paragraph of the syllabus:

"Since Const. art. 12, § 8, providing no law shall grant the right to operate a street railway within any city without its consent, does not, in express terms, delegate the power to fix rates, a franchise ordinance, made pursuant thereto, fixing passenger rates, and accepted by a street railway company, although it constitutes a binding contract between the parties, is subject to the rate-making power of the state."

In *Union Portland Cement Co.* v. *Public Utilities Commission,* supra, plaintiff applied to this court for a writ of prohibition restraining the defendant Commission from assuming to exercise jurisdiction to pass upon the reasonableness or unreasonableness of certain contracts fixing rates for public utility service, which contracts were entered into before the passage of the Public Utilities Act. The question presented was not determined by the court, for the reason that the act provided a plain, speedy, and adequate remedy by writ of review. The position of the court on the merits of the case, however, was clearly foreshadowed in the opinion as published in the Pacific Reporter at pages 595, 596, in 56 Utah at page 180, citing a recent decision of the Supreme Court of the United States in line with defendant's contention in the instant case.

In *Murray City* v. *Utah Light & Traction Co.,* supra, one question involved was the right of defendant railway company to increase its fares in disregard of a contract evidenced by a franchise ordinance. The opinion, as far as that feature of the case is concerned, is sufficiently reflected in the first headnote of the syllabus:

"Power to fix fare to be received by a street railway or its proprietary companies having been retained by the state by the Public Utilities Act, such power can be exercised by it whenever the necessity requires, despite ordinance of city granting railway right to operate over a street; such action not impairing obligation of a contract."

The *U. S. Smelting, Ref. & M. Co. Case,* heretofore cited, is undoubtedly the nearest approach to a case in point of any case thus far decided by the court. As before stated, in its different aspects, it is relied on by both plaintiff and defendants, and especially by defendants, who regard the case as conclusive of the question before the court. Its importance, therefore, demands a more extended review. That case, like the case at bar, came before this court on a writ of review, as provided in the Public Utilities Act. Several parties, including the plaintiff in the case at bar, filed separate applications for the writ, but by stipulation the cases were heard together and submitted at the same time. Each of the parties plaintiff represented to the court that it had entered into a special contract with the defendant power company for public utility service rates before the enactment of the Public Utilities Act, and that the Commission had assumed jurisdiction to increase said contract rates in violation of the federal and state Constitutions against impairing the obligation of contracts and depriving persons of property without due process of law. The case was ably argued by many of the most eminent lawyers of the state, and comprehensive briefs were filed covering practically every phase of the questions involved. The identical question presented in the present case was the principal question before the court in the case now under review. The principal and only substantial grievance complained of by all the parties plaintiff was that the order of the Commission increasing rates for service above the rates agreed upon in their contracts with the power company was in disregard of their constitutional rights. Each of the plaintiffs claimed that its particular contract was excepted from the operation of the Public Utilities Act by the proviso to section 4787, subd. 3, heretofore referred to, which provides, inter alia, that nothing in the act shall be construed "to prevent the carrying out of contracts for * * * public utility service heretofore made founded upon adequate consideration and lawful when made."

The Commission having found that the contract relied on was not founded upon an adequate consideration, in view of

the object and purpose contemplated by the Utilities Act, the phrase "founded upon adequate consideration and lawful when made" became the rallying point around which the forensic battle waged. The plaintiffs all contended, in effect, that the term "adequate consideration" meant such a consideration as would uphold a contract in equity if the contract were assailed for want of consideration. This court, however, in an elaborate and well-considered opinion, held, in substance, that an adequate consideration under the Utilities Act meant "such a consideration as when added to or considered in connection with the reduced rate agreed upon will make such rate nonpreferential and nondiscriminatory." It is not necessary in this opinion that any attempt should be made to further explain or define the meaning of the term "adequate consideration" as used in the act. Its meaning as determined in the case under review is not challenged by plaintiff in this proceeding.

After some further elaboration of the term "adequate consideration" and illustrating its meaning by pertinent examples, the court proceeds to a consideration of the constitutional questions involved. After referring to the constitutional provision invoked by plaintiff, to wit, article 1, § 18, of the Utah Constitution and article 1, § 10, of the federal Constitution, the court, at page 182 of Vol. 58 Utah Reports and at page 907 of the Pacific Reporter above referred to says:

"It has been held repeatedly, both by the Supreme Court of the United States and the courts of last resort of many of the states, including this court, that the regulation of rates for public utilities is a governmental function coming directly within the police power of the state, and that for that reason the establishing or modifying of rates, although contractual, does not violate the constitutional provision aforesaid. Among the numerous cases that could be cited in support of the foregoing proposition we shall refer only to the following. * * *"

The cases are numerous, and need not be cited in this opinion. After citing the cases the court then proceeds to dispose of the identical question presented here:

"It is, however, insisted that the foregoing cases are not con-

trolling here for the reason that in those cases the contracts in question were entered into after the utilities law was passed, or that the cases emanated from states where there were constitutional provisions authorizing the regulation of rates, while in the instant case the contract in question was entered into long before the act was passed. It is therefore argued that in view that there was neither a statutory regulation law nor a constitutional provision authorizing such regulation in force at the time the contract was entered into, it was lawful when made, and in view of that the obligations thereby assumed cannot be changed without impairing its obligations. While it is true that the contract in question was entered into before the act was passed, and equally true that in this state there is no constitutional provision expressly authorizing the Legislature to regulate rates for a service such as is rendered by the power company, yet it is beyond controversy that the right to regulate the rates of public utilities always existed potentially, and that the right could be exercised at any time the state, through its agency, the Legislature, deemed it wise and proper so to do. Where the right to exercise the police power exists we can conceive of no valid reason why the state may not exercise the right at any time, and that every contract concerning rates for public utility service must conclusively be presumed to have been entered into in view of and subject to that right. If that were not so, then a public utility could enter into a long term contract, say for fifty years or longer, in which it was given a preferential or discriminatory rate, and it thereby not only could prevent any other similar utility to successfully compete with it, but it could successfully defy the sovereign state itself. Such happily is not the law."

The court then refers to *C., R. I. & P. Ry. Co.* v. *Taylor,* 79 Okl. 142, 192 Pac. 349, one of the cases before cited, and quotes therefrom pertinent excerpts, one of which we here reproduce:

"As neither the state nor the municipality can surrender by contract the governmental power to guard the safety, morals, health, and good order of society, a contract purporting to do so is void ab initio, and, being void, it is impossible to speak of laws in conflict with its terms as impairing the obligations of a contract."

The court also refers to *Producers' Transportation Co.* v. *R. R. Comm.,* 251 U. S. 228, 40 Sup. Ct. 131, 64 L. Ed. 239, and quotes from the opinion as follows:

"That some of the contracts before mentioned were entered into before the statute was adopted or the order made is not material.

A common carrier cannot by making contracts for future transportation or by mortgaging its property or pledging its income, prevent or postpone the exertion by the state of the power to regulate the carrier's rates and practices."

In connection with the excerpt last quoted, which relates to transportation service, the opinion of this court continues:

"The right and duty of the state to regulate the rates of public utilities in the public interest is as much an attribute of sovereignty or of government as are the things enumerated in the excerpt above quoted from *Chicago, R. I. & P. Ry. Co.* v. *Taylor*, supra, and hence comes squarely within the principle there stated."

Reference is made to many other cases, all to the same effect. The opinion concludes by affirming the order of the Commission.

The writer is convinced that enough has been said to illustrate the views of this court in respect to the question presented for our consideration. There is one case, however, which has not been reviewed. The case of *Utah Copper Co.* v. *Public Utilities Commission,* supra, is the very last expression of the court. The opinion, which was mailed to the publisher during the present month, January, 1922, contains the following paragraph pertinent to the question now under review:

"As to the jurisdiction and powers of the Commission generally to regulate the public utilities of the state, and fix the rates to be charged the public in accordance with our Utilities Act, regardless of contractual relations, we need not here comment. These questions have already been considered and determined by this court, as we think, in accordance with the legislative intent and the mandate of our State Constitution"—citing the Utah cases.

Whatever may be said concerning the merits of these decisions as correct expositions of the law, there is no escape from the conclusion that they determine the constitutional question presented here, and are therefore stare decisis. They hold without qualification or evasion that in the fixing of rates for public utility service under the Utah Public Utilities Act the Commission is not limited or controlled by the provisions of antecedent contracts, but is at liberty to disregard such contracts altogether if they come in conflict with what the Commission finds to be a reasonable rate under the

conditions existing at the time of making the investigation. The doctrine proceeds upon the assumption that the making of public utility rates is a governmental function within the police power of the state, and that those matters which pertain to the peace, good order, and general welfare of society cannot be made the subject of binding contract as against the state. It is inconceivable that the people of either the nation or the state in framing their Constitution contemplated that the hands of the government could be tied by means of private contracts in matters pertaining to the general welfare of those for whom such governments were established. To so interpret the Constitution, either state or federal, would be in effect to deprive such governments of their sovereign power and subject them to the control of private parties, in which case the general welfare of the people would become subservient to the interests of those who believe it right to exploit the sovereign powers of the state for the gratification of private greed.

These observations are entirely impersonal. There is nothing in the record in this case impeaching the good faith of plaintiff notwithstanding our opinion that its constitutional rights have not been infringed in the matter complained of.

Plaintiff calls the attention of the court to the following cases from other jurisdictions: *City of Superior* v. *Douglas Co. Tel. Co.,* 141 Wis. 363, 122 N. W. 1023; *Gas Co.* v. *City of Adrian,* 209 Mich. 52, 176 N. W. 590, 10 A. L. R. 1328; *City of Moorhead* v. *Union Light, Heat & Power Co.* (D. C.) 255 Fed. 920. These cases lend considerable support to plaintiff's contention that contracts in cases of this kind as well as in other cases should be construed as of the time they were entered into rather than of a subsequent date. It would be a useless consumption of time and space to give these cases an extended review. They are not only in direct conflict with the decisions of this court to which we have called attention, but to recent decisions of the Supreme Court of the United States in which the identical question presented here was adjudicated and determined. *Union Drygoods Co.* v. *Georgia Pub. Ser. Corp.,* 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309,

9 A. L. R. 1420; *Kansas City B. & N. Co.* v. *Kansas City L. & P. Co.*, 275 Mo. 529, 204 S. W. 1074, affirmed 252 U. S. 571, 40 Sup. Ct. 392, 64 L. Ed. 721.

It follows from what has been said in the preceding pages that the order of the Commission authorizing the power company to increase its rates in the instant case should be affirmed.

In connection with the order increasing the rate, it will be remembered that the Commission also ordered the power company to allow the plaintiff an annual credit during the life of the contract between the parties in the sum of $5,683.41, on account of what plaintiff, by virtue of said contract, had paid more than other consumers of the same class. As to whether or not the Commission had jurisdiction to determine the amount of the excess paid by the plaintiff and direct it to be applied as a credit on plaintiff's account with the power company we deem it prudent to withhold our opinion. The question of jurisdiction was not raised by plaintiff either in the pleadings or the argument, and for that reason we do not feel authorized to discuss the matter at length. The power of the Commission to fix and establish rates and in connection therewith to determine all questions of fact is thoroughly settled by previous decisions of the court. Whether the Commission also has power to determine the amount a party has been damaged where the Commission in the rightful exercise of its jurisdiction in fixing rates finds it necessary to supersede the provision of an existing contract, presents another and different question. In any event, it is better that the question be reserved in the present case than that an unqualified order be made affirming the order of the Commission.

But one question remains. Plaintiff complains that the Commission did not expressly find whether or not plaintiff is to be supplied with service at "wholesale," as provided in the contract, and that the finding as to the rate to be paid by plaintiff is uncertain and indefinite. After a careful examination of the findings both in the original report and upon rehearing before the Commission, we are forced to con-

clude that plaintiff's objection and criticism in this      3
regard is well founded. This may be a matter of some
importance to the plaintiff, and we know of no reason why
the Commission should not make an express finding as to
whether or not the service should be furnished at wholesale
price or at least make the rate to be paid by plaintiff definite
and certain.

It is therefore ordered that the order of the Commission,
except as to the question reserved, be affirmed, and that the
cause be remanded to the Commission for further findings in
accordance with the views expressed in the opinion.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK,
JJ., concur.