**AMAX MAGNESIUM CORPORATION, Petitioner,**

v.

**UTAH STATE TAX COMMISSION and Tooele County, Respondents.**

No. 920707–CA.

Court of Appeals of Utah.

March 3, 1993.

Mark K. Buchi, David K. Detton, R. Bruce Johnson, and Steven C. Bednar, Salt Lake City, for petitioner.

Jan Graham, Stephen G. Schwendiman, and L.A. Dever, Salt Lake City, for respondent State Tax Com'n.

Ronald L. Elton and Bill Thomas Peters, Salt Lake City, for respondent Tooele County.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GARFF, Judge:

Petitioner Amax Magnesium Corporation (Amax) seeks review of the Utah State Tax Commission's (Commission) February 25, 1992 decision rendered in response to the Utah Supreme Court's remand order. *See Amax Magnesium Corp. v. Utah State Tax Comm'n*, 796 P.2d 1256 (Utah 1990) (*"Amax I"*).

### PROCEDURE

On January 2, 1987, Amax petitioned the Commission for a formal hearing concerning Amax's 1986 ad valorem tax assessment. On December 21, 1987, the Commission entered its Findings of Fact, Conclusions of Law and Final Decision. In its decision, the Commission denied Amax the benefit of a twenty percent reduction applied to locally assessed property. The Commission decided that "[s]uch non-application of the exemption to centrally assessed property is not unconstitutional." The Commission denied Amax's petition for reconsideration on May 31, 1988.

On June 29, 1988, Amax petitioned the Utah Supreme Court for review of the

Commission's 1987 decision, challenging "whether the Commission properly refused to assess [Amax's] subject property at 80% of its assessed value as its 'reasonable fair cash value' as required by U.C.A. §§ 59-5-1, 59-5-4.5(1), 59-5-13, and the Utah Constitution, art. xiii, §§ 2, 3."

In *Amax I,* the Utah Supreme Court reversed the Commission's decision, holding that the Commission's refusal to grant Amax the twenty percent reduction received by locally assessed taxpayers violated the Utah Constitution. *Id.* at 1260. The court held "it would be in violation of the constitutional mandate of article XIII, sections 2 and 3 that all property be taxed in a uniform and equal manner if section 59-5-4.5 is not applied to Amax's property." *Id.* The court also held the Commission's decision violated the equal protection component of the Utah Constitution, concluding there was "no reasonable relationship between the classification and the purpose of the statute, which is to equalize the tax burdens." *Id.* at 1261.

The supreme court remanded the case to the Commission "for the purpose of calculating the reasonable fair cash value of Amax's real and personal property pursuant to the formula set out in Utah Code Ann. § 59-5-4.5." *Id.* at 1262.

On remand, the Commission issued its decision February 25, 1992, wherein it concluded: "The [twenty percent] reduction set forth in § 59-5-4.5, should be applied to that portion of the 1986 AMAX taxable property which was valued using the same methodology as was used on the same type of property by the Tooele County Assessor in 1986." The Commission then directed a further proceeding be held to determine which class of property located within Tooele County and assessed by the Tooele County Assessor receives the application of Utah Code Annotated § 59-5-4.5.

Amax, claiming the Commission's decision fails to implement the directives of the supreme court and ignores the plain language of the remand order, petitioned the Utah Supreme Court for review.

Tooele County moved for dismissal of this appeal based on lack of subject matter jurisdiction, arguing that the Commission's decision was not a final appealable order. Amax also moved for summary disposition. The supreme court reserved ruling on both motions. Then, in October 1992, the supreme court, pursuant to Utah Code Ann. § 78-2-2(4) and Utah Rule of Appellate Procedure 42, transferred the case to this court.

## JURISDICTION

■ The Commission and Tooele County claim the Utah Court of Appeals is without subject matter jurisdiction to hear this case because the Commission's decision, which requires a further proceeding, is not a final appealable order. We disagree. We view this as an enforcement proceeding to determine if the Commission has complied with *Amax I.*

Both this court and the Utah Supreme Court have jurisdiction "to issue all ... process necessary: to carry into effect its judgments, orders, and decrees...." Utah Code Ann. §§ 78-2-2(2), 78-2a-3(1)(a) (1992).

Moreover, this court has appellate jurisdiction over cases transferred from the Utah Supreme Court. Utah Code Ann. § 78-2a-3(2)(k). When the supreme court transfers a case to us, "we stand in that court's shoes for all purposes pertinent to the case" and we "become fully entitled to manage the case now before us." *Conder v. A.L. Williams & Assocs. Inc.,* 739 P.2d 634, 636 (Utah App.1987).

We therefore have jurisdiction to rule on this matter pursuant to the above provisions. Our posture here then is to provide the necessary process to carry into effect the supreme court's remand order issued in *Amax I. See* Utah Code Ann. § 78-2a-3(1)(a); *Conder,* 739 P.2d at 636.

## COMPLIANCE WITH REMAND ORDER

Amax claims the Commission's final decision exceeds its jurisdiction because the decision fails to comply with the supreme court's directive to apply the twenty percent discount required by section 59-5-4.5 to Amax's real and personal property.

Specifically, Amax claims the Commission was wrong in applying section 59-5-4.5 to only the same ·classification of Amax's property that would have received the reduction had it been assessed by the Tooele County Assessor. Amax also claims the Commission erred in · ordering a further proceeding to determine "which class of property located within Tooele County and assessed by the Tooele County Assessor received the application of Utah Code Annotated § 59-5-4.5."

■ The following principles are relevant to our analysis: "On remand the trial court has only. such jurisdiction with respect to an issue appealed as is conferred by the opinion and mandate of the appellate court." *Normand in re Normand v. Ray,* 109 N.M. 403, 408–09, 785 P.2d 743, 748–49 (1990); *accord Bryfogle v. Arizona Dep't of Corrections,* 153 Ariz. 598, 600, 739 P.2d 819, 821 (Ct.App.1987). A trial court performs "a mere ministerial act rather than a judicial act when it enters an order pursuant to the specific directions of an appellate court." *Scates v. Arizona Corp. Comm'n,* 124 Ariz. 73, 75, 601 P.2d 1357, 1359 (Ct.App.1979). Where the language used in the body of an appellate opinion conflicts with directions on remand, the latter controls. *See In re Estate of Painter v. Colorado,* 671 P.2d 1331, 1333 (Colo.Ct.App.1983).

Because our review of whether the Commission followed the directives of *Amax I* requires us to apply the law of *Amax I* to the facts, the issue is one of law, which we review for correctness. *State v. Thurman,* 846 P.2d 1256, 1270 n. 11 (Utah 1993); *accord Gaudiane v. Lundgren,* 754 P.2d 742, 744 (Alaska 1988) (per curiam).

## AMAX I

■ Amax raised the issue of the application of the statute to all of its property, both real and personal, before the Commission and before the Utah Supreme Court. Even so, the supreme court did not distinguish between real and personal property, nor did it distinguish between those classes of property to which Tooele County historically applied this section. *See Amax Mag-*

*nesium Corp. v. Utah State Tax Comm'n,* 796 P.2d 1256 (Utah 1990). Instead, the supreme court required that the Commission apply section 59-5-4.5 to all Amax's property. *Id.* at 1262. Recognizing "that various fees, services, closing costs, and other expenses related to the transaction lessen the actual amount that may be received in the transaction", the county assessor is required to assess all taxable county-assessed property at eighty percent of its reasonable fair cash value when using the comparable sales or cost appraisal method of valuing property. Utah Code Ann. § 59-5-4.5(1) (1986).

*Amax I* likewise distinguishes property based on the method used to appraise it. *Id.* at 1261:

> In the present case, the record reflects that the Tax Commission admits that it assessed Amax at 100 percent of the current fair cash value and that its assessor used the same market value method of assessment used by county assessors. The only reason Amax's property is assessed at 100 percent of value rather than at 80 percent is that Amax's property is required by the Utah Constitution and by statute to be taxed as state-assessed property.
>
> It strains reason to assert that if assessors using the cost and market appraisal methods overvalue county properties, the same overvaluation would not occur with state properties appraised by the same methods. Assuming that the legislature was correct in determining that the market value appraisal method overvalues property by 20 percent, it would be unconstitutional to apply section 59-5-4.5 to county-assessed properties and not to state-assessed properties. Applying section 59-5-4.5 to the facts of this case, we hold that it would be in violation of the constitutional mandate of article XIII, sections 2 and 3 that all property be taxed in a uniform and equal manner if section 59-5-4.5 is not applied to Amax's property.

*Id.* at 1260 (footnotes omitted).

The supreme court thereupon remanded the case "to the Tax Commission for the

purpose of calculating the reasonable fair cash value of Amax's real and personal property pursuant to the formula set out in Utah Code Ann. § 59–5–4.5." *Id.* at 1262.

Because the language of *Amax I* does not refer to Tooele's historical practices and does not distinguish between real and personal property, we hold that the Commission failed to follow the directives of *Amax I* when it refused to apply section 59–5–4.5 to all Amax's property.[1]

## CONCLUSION

We therefore order, pursuant to Utah Code Ann. § 78–2a–3(1)(a), and pursuant to the supreme court's directives in *Amax I,* that the Commission apply section 59–5–4.5 to all of Amax's property, whether real or personal.

ORME, Judge (concurring):

I concur in Judge Garff's opinion. In so doing, I must note I find it entirely possible, along the lines suggested by Judge Greenwood in her opinion, that the Supreme Court did not fully appreciate the implications of the phraseology it employed in remanding "for the purpose of calculating the reasonable fair cash value of Amax's real *and personal* property."[1] *Amax I,* 796 P.2d at 1262 (emphasis added).

However, that is the language used and it would not be appropriate for this court to presume to say that the Supreme Court did not say what it meant but actually meant something other than what it said. Quite the contrary, we are necessarily reluctant, in the absence of a compelling showing, to conclude that a Supreme Court "opinion should not be taken at face value." *Trimble Real Estate v. Monte Vista Ranch,* 758 P.2d 451, 455 (Utah App.1988). In short, if *Amax I* needs fixing, it is uniquely within the Supreme Court's province to say so.

Having so stated, I must note that appeals to the Supreme Court following remand by the Supreme Court, and which primarily concern what the Supreme Court actually intended in remanding for further proceedings, are, as a matter of institutional reality, the worst possible candidates for discretionary transfer by the Supreme Court to this court.[2] This case and *Halladay v. Cluff,* 739 P.2d 643 (Utah App.1987), are examples. In this narrow range of cases,[3] judicial economy and economy to the litigants are invariably best served by the Supreme Court retaining and deciding the subsequent appeal rather than by transferring the appeal to this court.

GREENWOOD, Judge (concurring):

I concur in both the reasoning of the main opinion and the comments of Judge

---

**1.** Tooele County argues that if the Commission were to apply an across the board twenty percent reduction of the assessed value of Amax's properties, without inquiring as to which Tooele County properties received that reduction in 1986, Amax could receive a benefit not realized by other taxpayers. Tooele County argues that such a result would violate the principles of *Amax I,* and article XIII, sections 2 and 3 of the state constitution.

We agree that the language of *Amax I* stresses the constitutional mandate of the Utah Constitution that all property be taxed in a uniform and equal manner. *Id.* at 1260. However, we reject Tooele County's interpretation that the fact that it fails to apply section 59–5–4.5 to both real and personal property, grants it the right to fail to apply the section to all of Amax's property. Moreover, the supreme court, mindful of the issue, required that the section be applied to all of Amax's property.

**1.** On the other hand, why such a problem would not have been immediately called to the Supreme Court's attention in a petition for rehear-

ing escapes me. The alternative employed by the Commission, namely rather creative proceedings on remand, seems a most unacceptable way to address the problem.

**2.** I hasten to add that many appeals following Supreme Court remand are perfectly appropriate for transfer to this court, i.e., those raising questions about self-standing legal mistakes which allegedly occurred on remand, as opposed to questions about what the Supreme Court really intended in remanding. One example of the former that comes readily to mind is *John Call Engineering v. Manti City,* 795 P.2d 678 (Utah App.1990).

**3.** Cases like *Trimble,* which was not an appeal following remand but an appeal in a subsequent, related case, are sometimes on the same footing. The *Trimble* appeal, transferred to and decided by this court, concerned whether a prior Supreme Court opinion issued in an appeal growing out of the same dispute had actually been intended to conclusively adjudicate a particular issue. *See* 758 P.2d at 454–55.

Orme's concurring opinion. I write to explicate somewhat more fully the conundrum posed by this case.

The Utah Supreme Court's opinion in *Amax Magnesium Corp. v. Tax Comm'n,* 796 P.2d 1256 (Utah 1990), found it unconstitutional for the state to tax property at 100% of its fair market value, where the county assessed only 80% of that fair market value, and both entities used the same cost appraisal method. In this appeal, we are told by the Tax Commission that when assessing personal property, as opposed to real property, both the state and the county assess at 100% of the fair market value, and both utilize the cost appraisal method of valuing personal property. On its face, this would not appear to run afoul of article XIII, section 2(1) of the Utah Constitution (requiring uniform taxation) nor violate equal protection provisions. It might, however, pose a problem for the county

under section 59-4-4.5(1) (1987).[1] *Amax I* does not address the allegedly different situation involving personal property, but only the constitutional problems arising from disparate treatment of taxpayers.[2] Since personal property is purportedly not treated in different ways by the state and the county, it is unclear to me why *Amax I* remanded for "calculating the reasonable fair cash value of Amax's real and personal property pursuant to the formula set out in Utah Code Ann. § 59-5-4.5." Nevertheless, given the unequivocal language, the Tax Commission must follow the directive on remand.

---

1. The statute requires assessment of "taxable property" at 80% of "reasonable fair cash value when using the comparable sales or cost appraisal method of valuing property," not at the 100% level apparently utilized by the county.

2. *Amax I* does, however, discuss the likelihood of overvaluation of property using cost and

market appraisal methods. *Id.* at 1260. Presumably, that would be true of both real and personal property.