2011 UT App 252

**HI–COUNTRY ESTATES HOME-OWNERS ASSOCIATION, a Utah corporation, Plaintiff,**

v.

**BAGLEY & COMPANY, et al., Defendants.**

Foothills Water Company, a Utah corporation; J. Rodney Dansie; Dansie Family Trust; Richard P. Dansie; Joyce M. Taylor; and Bonnie R. Parkin, Counterclaimants and Appellants,

v.

Hi–Country Estates Homeowners Association, a Utah corporation, Counterclaim Defendant and Appellee.

No. 20090433–CA.

Court of Appeals of Utah.

July 29, 2011.

J. Thomas Bowen, Midvale, for Appellants.

J. Craig Smith, Matthew E. Jensen, and Jeffry R. Gittins, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and VOROS.

### AMENDED MEMORANDUM DECISION [1]

VOROS, Judge:

¶ 1 This appeal represents the latest episode in a course of litigation spanning a

---

1. This Amended Memorandum Decision super-      sedes the Amended Memorandum Decision in

quarter of a century. We last ruled in this case in *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, 182 P.3d 417, *cert. denied*, 199 P.3d 970 (2008). That appeal arose from a counterclaim filed by Foothills Water Company, J. Rodney Dansie, the Dansie Family Trust, Richard P. Dansie, Boyd W. Dansie, Joyce M. Taylor, and Bonnie R. Parkin (collectively, the Dansies) against the Hi–Country Estates Homeowners Association (the Association). *See id.* ¶ 1. The Dansies sought damages for breach of a 1977 well lease agreement (the Well Lease). *See id.* ¶ 2.

¶ 2 The trial court entered an omnibus order somewhat optimistically titled Final Judgment. *See id.* ¶ 6. First, the court ruled that the Well Lease was an enforceable contract, neither void as against public policy nor unconscionable. *See id.* Second, the trial court denied the Dansies' breach of contract claims. *See id.* In the context of these claims, the trial court ruled that, pursuant to a 1986 order of the Public Service Commission (PSC), the Dansies were entitled to receive water under the Well Lease only upon payment of their pro rata share of fees and costs and not, as stated in the Well Lease itself, "at no cost." *See id.* Because the Dansies had refused to pay these fees, the trial court ruled that the Association had not breached its obligation under the Well Lease. *See id.* In addition, the trial court found no evidentiary basis for the Dansies' claim of damages in the form of an orchard withering, loss of landscaping, and loss of property value. *See id.* ¶ 17. Third, the trial court awarded the Dansies judgment in the sum of $16,334.99 as reimbursement for improvements to the water system. *See id.* ¶ 6. Finally, the trial court denied the Dansies' claim for attorney fees. *See id.*

¶ 3 The Dansies appealed. We affirmed the trial court's order that the Well Lease was not void as against public policy. *See id.* ¶ 13. In doing so, we stated in a footnote that, because the PSC no longer exercised jurisdiction over the Association, "we now interpret the Dansies' rights and obligations under the Well Lease according to its plain language." *Id.* ¶ 12 n. 2. We also affirmed

the trial court's order that the Well Lease was not unconscionable. *See id.* ¶ 15. And we affirmed the trial court's denial of the Dansies' breach of contract claims relating to the severing of the water systems. *See id.* ¶ 16. We did so under the rules of appellate procedure, holding that in challenging on appeal the trial court's factual findings on damages, the Dansies had failed to marshal the evidence as required by rule 24(a)(9) of the Utah Rules of Appellate Procedure. *See id.* ¶ 20; *see also* Utah R.App. P. 24(a)(9). We also affirmed the trial court's judgment in favor of the Dansies in the sum of $16,334.99. *See Hi–Country Estates*, 2008 UT App 105, ¶ 21, 182 P.3d 417. Finally, we affirmed the trial court's denial of attorney fees. *See id.* ¶ 22. Our opinion concluded, "We therefore affirm the trial court on all issues." *Id.* ¶ 24. The Utah Supreme Court denied cross-petitions for certiorari.

¶ 4 After remittitur, the Dansies filed a motion with the trial court to modify the Final Judgment to conform to footnote 2 of our opinion as they understood it. The Association resisted the motion, and the trial court denied it. The Dansies appeal. We conclude that our 2008 opinion appropriately resolved the issues before us under relevant principles of appellate review. Furthermore, the trial court properly read our opinion as a complete affirmance.

¶ 5 "The mandate rule dictates that pronouncements of an appellate court on legal issues in a case become the law of the case and must be followed in subsequent proceedings of that case. The mandate rule ... binds both the district court and the parties to honor the mandate of the appellate court." *Utah Dep't of Transp. v. Ivers*, 2009 UT 56, ¶ 12, 218 P.3d 583 (omission in original) (citation and internal quotation marks omitted). "The lower court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* (internal quotation marks omitted).

¶ 6 For reasons we explain below, we do not believe the language in footnote two of our opinion conflicts with our ultimate

order. Nevertheless, to the extent a real or apparent conflict exists in a judicial opinion, the opinion's "directions" control. *See Amax Magnesium Corp. v. Utah State Tax Comm'n*, 848 P.2d 715, 718 (Utah Ct.App. 1993) ("Where the language used in the body of an appellate opinion conflicts with directions on remand, the latter controls."), *rev'd on other grounds*, 874 P.2d 840 (Utah 1994). And the only directions in our 2008 opinion indicate that we are affirming the trial court on all issues. The opening paragraph of that opinion states, "Counterclaim Plaintiffs ... appeal several of the trial court's determinations. Counterclaim Defendant ... filed a cross-appeal challenging other determinations. We affirm." *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 1, 182 P.3d 417. The final sentence of the opinion states, "We therefore affirm the trial court on all issues." *Id.* ¶ 24. Nowhere in the opinion do we use the words "reverse," "vacate," "modify," or (except in reciting the history of the litigation) "remand." We therefore agree with the trial court that, "in the face of the unequivocal affirmance by the Court of Appeals, [the trial court] lacks authority to modify the final judgment." The trial court thus properly refused to interpret an opinion that states, "We therefore affirm the trial court on all issues" as having actually affirmed on some issues and reversed on others. A contrary approach would risk eroding the clarity of the mandate rule and the authority of the appellate courts of this state.

¶ 7 Mandate rule aside, we do not read our 2008 opinion as a partial reversal. Footnote two appears in section I of the opinion. We there rejected the Association's claim that the Well Lease's "provisions for free water and water connections" are void as against public policy. We explained in footnote two that, because the 1986 order of the PSC was no longer in effect, we would interpret the Well Lease "according to its plain language." *Id.* ¶ 12 n. 2. We thus clarified that the precise question we were treating was whether the Well Lease *as written*—not as

superseded by PSC directives—was contrary to public policy. We concluded that it was not. *See id.* ¶¶ 12–13. A contrary ruling—that the Well Lease as written was unenforceable because it was unconscionable or against public policy—would have barred all the Dansies' past and future breach of contract claims. Our determination that the Well Lease did not offend public policy left unresolved the question of breach of contract.

■ ¶ 8 We resolved the breach of contract claim in section III. *See id.* ¶ 16. We noted there that the trial court had addressed both breach and damages.[2] We first summarized the trial court's ruling with respect to breach; in so doing, we noted that "[i]n dismissing the claims, the trial court relied on the 1986 PSC order." *Id.* We then summarized the trial court's ruling with respect to damages, noting that the trial court had "determined that the Dansies had failed to prove damages proximately caused by the alleged breach." *Id.* We resolved this issue on the element of damages, "affirm[ing] the dismissal of the breach of contract claims based on this failure to prove damages." *Id.* We properly did so on the ground that the Dansies had not "adequately marshal[ed] the evidence." *Id.* ¶ 20. Resolving the claim on the element of damages made it unnecessary for us to address whether a breach of the contract had been otherwise established. *See id.* ¶ 20.

¶ 9 Our 2008 opinion thus resolved all outstanding issues in favor of the trial court's order. It explicitly resolved all issues enumerated in the concluding paragraph. *See id.* ¶ 24. Any remaining challenges to the trial court's order, whether or not we addressed them on the merits, were also necessarily resolved in favor of the trial court's order. *See Piacitelli v. Southern Utah State Coll.*, 636 P.2d 1063, 1065 (Utah 1981) (noting that a final order, "unless reversed on appeal, is res judicata and binding upon [the] parties"). Finally, any challenges to prior trial court rulings that the parties might have

---

2. Proof of damages is an element of a claim for breach of contract. *See Bair v. Axiom Design*, 2001 UT 20, ¶ 14, 20 P.3d 388 ("The elements of a prima facie case for breach of contract are (1)

a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.").

appealed, but did not, were at that point waived. *See DeBry v. Cascade Enters.*, 935 P.2d 499, 502 (Utah 1997) (failing to raise issues ripe for appeal results in waiver of the right to raise them at a later time).[3]

¶ 10 The opinion made no attempt to resolve future issues that might arise between the parties, including future claims of damages against the Association for future breaches of the Well Lease. The opinion did establish that, so long as the PSC does not exercise jurisdiction over the water system, the rights of the parties are as set forth by the plain language of the Well Lease. The Association contends that this can never happen, because as soon as it delivers a drop of water to the Dansies at no cost as required by the Well Lease, the PSC will exercise jurisdiction and require payment. Perhaps the Association is correct.[4] But none of us can foretell the future—statutes can be amended; regulations can be repealed; administrative policies and attitudes can change. Thus, our opinion wisely hazarded no guess as to whether the PSC could or would exert jurisdiction in the future, and thus made no effort to adjudicate the rights of the parties or the enforceability of the Well Lease going forward.

¶ 11 In sum, our 2008 opinion properly and consistently resolved all issues before us on appeal. Moreover, we see no error in the trial court's refusal to modify the Final Judgment after remittitur and therefore affirm its disposition.

## ON PETITION FOR REHEARING

¶ 12 The Dansies have petitioned for rehearing, claiming that our decision is confusing because it "does not provide guidance concerning the viability of ¶ 3 of the Final Judgment which requires the Dansies to pay the pro rata costs for the delivery of the water." We take this opportunity to resolve any such confusion.

¶ 13 In our 2008 opinion, we took pains in footnote 2 to explain that this payment obligation was a result of PSC regulation and that, with the termination of PSC jurisdiction over the water system, the Dansies' "rights and obligations under the Well Lease" would be determined "according to its plain language." *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 12 n. 2, 182 P.3d 417, *cert. denied*, 199 P.3d 970 (Utah 2008). We then quoted the provision of the Well Lease providing the Dansies with a certain number of free hook-ups and a certain amount of free water. And in the foregoing Amended Memorandum Decision we reiterated that, "so long as the PSC does not exercise jurisdiction over the water system, the rights of the parties are as set forth by the plain language of the Well Lease." *See supra* ¶ 10. We expressed no opinion on the Association's contention that, in the future, the Dansies could never enjoy free hook-ups and free water under the Well Lease because the PSC would necessarily re-exert jurisdiction and prevent it. Rather, we noted that "statutes can be amended; regulations can be repealed; administrative policies and attitudes can change." *Id.*

¶ 14 Thus, our affirmance of paragraph 3 of the Final Judgment must be understood as being limited to its historical context and not as "adjudicat[ing] the rights of the parties or the enforceability of the Well Lease going forward." To be clear, the effect of the Final Judgment, as affirmed and explained in our 2008 opinion and in the above Amended Memorandum Decision, is that the Dansies are, going forward, entitled to their

---

3. Notwithstanding our 2008 opinion stating that we affirmed the trial court "on all issues," the Dansies did not file a petition for rehearing. The Association filed a petition for rehearing on a question unrelated to the instant appeal. *See* Utah R.App. P. 35(a) (permitting the filing of a petition for rehearing within fourteen days after the entry of an appellate decision drawing the court's attention to "points of law or fact which the petitioner claims the court has overlooked or misapprehended"). We denied that petition.

4. The trial court seems to have accepted this argument. In its Memorandum Decision and Order dated November 5, 2001, the trial court ruled that, "because there was no way for The Association to provide water service to the Dansies without violating the 1986 PSC order, the damages that arose after February 5, 1996 are also not attributable to The Association." We did not, and did not need to, grapple with the vagaries of this argument on appeal. We resolved all issues on other grounds.

contractual rights to free water and free hook-ups unless the PSC intervenes and determines otherwise. Given these observations, the petition for rehearing is denied.

¶ 15 I CONCUR: GREGORY K. ORME, Judge.

DAVIS, Presiding Judge (dissenting):

¶ 16 The lead opinion recognizes the rule that a trial court is constrained to implement the spirit, and not only the letter, of our prior mandate. *See supra* ¶ 5 (citing *Utah Dep't of Transp. v. Ivers*, 2009 UT 56, ¶ 12, 218 P.3d 583). However, in assessing whether the trial court correctly implemented our prior mandate, the lead opinion does exactly the opposite, essentially focusing only on form and not on substance. This elevation of form over substance results in an outcome contrary to that intended in our prior opinion and is manifestly unjust. I therefore do not join the lead opinion and must dissent.

¶ 17 First, the lead opinion takes the "affirm on all issues" language out of context in order to support its argument that we were affirming on all issues that were pending before the trial court. Although the concluding sentence of our prior opinion read, "We therefore affirm the trial court on all issues," *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 24, 182 P.3d 417, the lead opinion fails to consider the phrase in context to determine what the "therefore" referenced. *See supra* ¶¶ 3, 6. When considering our prior opinion as a whole, it is clear that the "affirm on all issues" phrase was more limited than the lead opinion suggests. The paragraph in which the language occurs set forth *four* issues on which we affirmed the trial court. Then we summed up, quite unnecessarily, "We *therefore* affirm the trial court on all issues." *Hi–Country Estates*, 2008 UT App 105, ¶ 24, 182 P.3d 417 (emphasis added).

Thus, the "affirm on all issues" language refers only to our affirmance on each of the four issues that we had set forth in the previous sentences.[1]

¶ 18 Second, there seems to be some confusion regarding the breach of contract claims that were the subject of the prior appeal. The breach of contract claims included a cause of action based on the alleged breach caused by the Association separating the water systems, which requested relief in the form of damages, and a cause of action based on the Association's alleged breach resulting from its continuing refusal to provide free water and hook-ups, which requested relief in the form of specific performance. The section of our prior opinion entitled "Breach of the Well Lease" and the corresponding affirmance in our concluding paragraph addressed only the former—the claims for damages resulting from the 1994 separation of the water systems. *See id.* ¶ 16 (stating that the Dansies' breach of contract claims "were based on the Association severing the two water systems"); *id.* ¶ 17 (noting that the trial court had dismissed the contract claims because the Dansies "failed to prove any damages proximately caused by the separation of the two water systems"); *id.* ¶ 20 (affirming dismissal of breach of contract claims based on "failure to prove damages proximately caused by the alleged breach"); *id.* ¶ 24 (concluding that we affirmed the breach of contract claims because "the Dansies did not prove damages proximately caused by the separation of the water systems"). And we emphasized that when addressing such breach of contract claims, reliance on the 1986 PSC Order was appropriate because "the PSC did have jurisdiction over the Association at the time the alleged breach occurred," that is, the 1994 severance of the water systems. *Id.* ¶ 16. However, neither this section of our opinion nor the restated affirmance on this issue in our con-

---

1. The Association essentially argues that looking beyond the conclusion of an appellate opinion would create confusion and would allow a litigant to wait until an appeal was remitted to the trial court and then "scour the appellate decision for any scrap of language that may arguably indicate that the appellate court could not possibly have meant what it said." But ironically, the Association and the lead opinion do precisely this, focusing on only one phrase of the opinion to support their positions. Other than our "affirm on all issues" language taken out of context, there is absolutely nothing in our prior opinion that would support the Association's argument that we intended the PSC order to govern the parties after February 5, 1996, and to leave intact the determination to that effect found in the trial court's Final Judgment.

cluding paragraph addressed the alleged breach of contract due to the Association's continuing refusal to provide the benefits as set forth in the Well Lease even after PSC jurisdiction had ended. And our affirmance on the breach of contract claims due to separation of the water systems simply cannot be used to infer our affirmance of breach of contract claims that addressed the current obligations of the parties.[2] *Cf. Messick v. PHD Trucking Serv., Inc.*, 678 P.2d 791, 795 (Utah 1984) ("[P]laintiff's reliance upon this Court's former mandate ... is entirely out of context here. A close examination of our former opinion, and specifically the subject mandate, reveals that the mandate was directed toward the question of what *method* (pay schedule) rather than *rate* of compensation was to be used with regard to plaintiff's driving.").

¶ 19 Instead, the only portion of our prior opinion that addressed the breach of contract claims requesting specific performance was footnote 2, which stated as follows:

In addressing the breach of contract claims, the trial court determined that the Association was required to provide the water "only upon payment of [the Dansies'] pro rata share of the Association's cost for power, chlorination, and water testing," and that the Association was required to provide the water connections "only if [the Dansies] pa[id] the Association for those connections at the Association's usual charge for such connection." The court reasoned that such payment by the Dansies was required because "[t]he 1986 PSC Order prohibits the Well Lease from affecting the rates paid by ... the association members."

On February 5, 1996, the PSC revoked the status of the water system as a public utility. Therefore, from that point forward, the PSC did not have jurisdiction over the water system and the 1986 PSC order was no longer binding. Thus, we now interpret the Dansies' rights and obligations under the Well Lease according to its plain language, which, as amended, states: "Dansie shall have the right to receive up to five (5) residential hook-ups on to the water system on the Dansie property for members of his immediate family without any payment of hook-up fees and shall further have the right to receive up to 12 million (12,000,000) gallons of water per year from the combined water system at no cost for culinary and yard irrigation use...." The Well Lease also provides: "Dansie shall further have the right to receive up to fifty (50) residential hook-ups onto the water system on the Dansie property for which no hook-up fees will be charged."

*Hi–Country Estates,* 2008 UT App 105, ¶ 12 n. 2, 182 P.3d 417 (alterations and omissions in original) (citation omitted). Thus, we explained in footnote 2 that the trial court had made an unqualified determination that the Dansies were not entitled to free water and we concluded that such a determination was incorrect as far as it concerned alleged breaches occurring after February 5, 1996. The lead opinion is indeed correct that we never used any word such as "modify" or "vacate" that taken alone would indicate a reversal on this issue. However, I see no authority indicating that any particular words must be employed in order to disagree with and reverse a trial court on an issue. Again, the case law is clear that context is important and that we may not simply rely on individual words when interpreting an appellate mandate. *See, e.g., Coombs v. Salt Lake & Fort Douglas Ry. Co.,* 11 Utah 137, 39 P. 503, 506 (1895) (" 'The mandate and opinion, taken together, although they use the word, "reversed," amount to a reversal only in respect to the accounting, and to a modification of the decree in respect to the accounting, and to an affirmance of it in all other respects.' " (quoting *Gaines v. Rugg,* 148 U.S. 228, 238, 13 S.Ct. 611, 37 L.Ed. 432 (1893))).

2. Of course, the breach of contract claims requesting specific performance could not have been disposed of based upon our affirmance of the trial court's determination that the Dansies had failed to adequately prove damages. *See generally South Shores Concession, Inc. v. State,* 600 P.2d 550, 552 (Utah 1979) (" 'The right to specific performance is essentially an exceptional one, and a decree for such relief is given *instead of damages* only when by this means a court can do more perfect and complete justice.' " (emphasis added)).

¶ 20 The lead opinion states that our language in footnote 2 was not a partial reversal but was simply an explanation that we were not considering PSC directives when assessing the contract for enforceability. *See supra* ¶ 7. But the footnote language does not simply state that we are not considering the PSC directives, but that we are not considering those directives *because* the PSC Order is no longer binding and the parties are now to be governed by the unmodified language of the Well Lease. The language employed in footnote 2 gives no hint of being limited to our consideration of the Well Lease's validity but, rather, quite definitively states that "the 1986 PSC order was no longer binding [after February 5, 1996,]" and that "we now interpret the Dansies' rights and obligations under the Well Lease according to its plain language." *Hi–Country Estates*, 2008 UT App 105, ¶ 12 n. 2, 182 P.3d 417. The footnote also states, "[T]he Association is no longer a public utility, and thus, neither [statutes regulating public utilities] nor the PSC order is currently applicable to the Association." *Id.* ¶ 12. Thus, the footnote language establishes the current inapplicability of the PSC Order and the resulting current obligations of the parties, and is not merely setting up some hypothetical situation under which we would evaluate the validity of the Well Lease.[3]

¶ 21 Admittedly, we failed to include in the prior opinion's concluding paragraph our determination from footnote 2 regarding the current obligations of the parties under the Well Lease, which resulted in some under-standable confusion. This omission may have been either a mere oversight or an erroneous understanding that the issue was not yet squarely before us and that we needed only give guidance to govern issues that were very likely to arise in future proceedings. Nonetheless, I think it sufficient that both parties argue, and I would agree, that the issue was appropriately before us in the prior appeal and, as discussed above, we analyzed the issue and ruled thereon. The incomplete nature of our conclusion should not relieve the parties from being bound by our express decision on a matter appropriately before us.

¶ 22 Although the lead opinion recognizes that the spirit, and not only the letter, of our prior mandate must be implemented, I disagree that the opinion follows such a directive. Instead of considering the substance of our prior language, the lead opinion focuses entirely on form. The lead opinion reasons that the Dansies do not receive the benefits we referenced in footnote 2 only because (1) our prior concluding paragraph used the "affirm on all issues" language in its conclusion; (2) we did not use any words that by themselves indicate a reversal, such as "reverse" or "vacate"; and (3) the determination we made in footnote 2 was not reiterated in the concluding paragraph. *See supra* ¶¶ 6, 9. Indeed, the lead opinion concedes that our prior opinion "did establish that, so long as the PSC does not exercise jurisdiction over the water system, the rights of the parties are as set forth by the plain language of the Well Lease."[4] *Supra* ¶ 10. However, the

3. The Dansies are caught, the Association insists, in a Catch–22 that renders the promise of free water a perpetual mirage: because the Dansies are not members of the Association, as soon as the Association delivers a drop of water to them at no cost, it falls under the jurisdiction of the PSC. Once under PSC jurisdiction, the Association can no longer deliver water to them at no cost. In support of their argument, the Association points to language from a trial court memorandum decision issued prior to the Final Judgment. However, this memorandum decision was not brought to our attention by either party during the prior appeal. Furthermore, I am not convinced that the language from the memorandum decision is as unequivocal as the Association believes. The memorandum decision addressed the Association's Motion for Partial Summary Judgment With Regard to Damages Resulting from the Separation of the Two Water Systems, not any claim seeking specific performance of the Well Lease. And the trial court stated, immediately after reiterating the Association's Catch–22 argument, "[B]ecause there was no way for The Association to provide water service to the Dansies without violating the 1986 PSC order, *the damages* that arose after February 5, 1996 are also not attributable to The Association." (Emphasis added.) Thus, the trial court's memorandum decision addresses damages arising after, not obligations due after, February 5, 1996.

4. The trial court, too, recognized that we addressed the issue of the current obligations of the parties under the Well Lease, the trial court referring to our footnote 2 language as our "conclusion" on the issue. In the face of the under-

lead opinion refuses to give such determination any effect because it was not reiterated in the opinion's concluding paragraph. *See supra* ¶ 9 ("[Our prior opinion] explicitly resolved all issues enumerated in the concluding paragraph. Any remaining challenges to the trial court's order, whether or not we addressed them on the merits, were also necessarily resolved in favor of the trial court's order." (citation omitted)). I think such an approach is in direct violation of the requirement that we consider our whole opinion when assessing whether the trial court implemented our prior mandate, *see Frost v. Liberty Mut. Ins. Co.*, 813 S.W.2d 302, 304–05 (Mo.1991) ("On remand, proceedings in the trial court should be in accordance with both the mandate and the result contemplated in the opinion. It is well settled that the mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used to interpret the mandate . . . ." (omission in original) (citations and internal quotation marks omitted)); *Warren v. Robison*, 21 Utah 429, 61 P. 28, 30 (1900) ("[W]here an appeal is taken from a judgment of an inferior court entered under a

mandate of the appellate court, the latter tribunal will construe its own mandate *in connection with its opinion*, to determine whether the inferior court proceeded in accordance therewith." (emphasis added)). The mandate rule applies to "pronouncements of an appellate court on legal issues in a case," *Utah Dep't of Transp. v. Ivers*, 2009 UT 56, ¶ 12, 218 P.3d 583 (internal quotation marks omitted), and is not limited to only those pronouncements found within the concluding paragraph of an appellate opinion.[5]

¶ 23 I would reverse the trial court's denial of the Dansies' motion to modify and remand to the trial court for further proceedings.[6]

---

standing of both the trial court and my colleagues that we definitively addressed the issue, I cannot fault the Dansies for failing to file a petition for rehearing to alert us to the fact that such pronouncement was not included in our concluding paragraph. Indeed, it is quite possible that our oversight was not apparent to the Dansies before the time had passed for filing a petition for rehearing. Furthermore, it is entirely appropriate to challenge a trial court's implementation of an appellate court mandate though a new appeal.

5.   Of course, to the extent that there is an inconsistency between statements made in the appellate court's opinion and its ultimate mandate, the mandate controls. *See Amax Magnesium Corp. v. Utah State Tax Comm'n*, 848 P.2d 715, 718 (Utah Ct.App.1993) ("Where the language used in the body of an appellate opinion conflicts with directions on remand, the latter controls."), *rev'd on other grounds*, 874 P.2d 840 (Utah 1994). However, as the Association points out, "[a] court should be hesitant to conclude that there is an inconsistency and should make every effort to reconcile the body of the opinion to the directive." *See generally Culbertson v. Board of Cnty. Comm'rs*, 2001 UT 108, ¶ 15, 44 P.3d 642 ("We construe an ambiguous order under the rules that apply to other legal documents."); *Utah Valley Bank v. Tanner*, 636 P.2d 1060, 1061–62 (Utah 1981) ("Each contract provision is to be considered in relation to all of the others,

with a view toward giving effect to all and ignoring none."). Here there is no inconsistency between footnote 2 and our concluding paragraph because, as explained above, footnote 2 addressed the claims requesting specific performance and the concluding paragraph addressed the claims requesting damages. Footnote 2 contains two full paragraphs of analysis explicitly setting forth our conclusion that the PSC Order was not applicable after February 5, 1996, in evaluating the rights and obligations of the parties under the Well Lease. And there is no other statement within our decision that would indicate that we took any position to the contrary, that is, that the order was still at all applicable after February 5, 1996.

6.   An appellate court has the authority to reopen issues previously decided "when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Thurston v. Box Elder Cnty.*, 892 P.2d 1034, 1039 (Utah 1995). Although I do not agree with the lead opinion in its interpretation of our prior mandate, I think that under such an interpretation our prior opinion is clearly erroneous and works a manifest injustice. I would therefore exercise our authority to reopen the issue in order to avoid the unjust result of unintentionally relieving the Association from its obligations under the Well Lease via what was essentially a clerical error of failing to reiterate a determination in our concluding paragraph.