2016 UT App 116

## THE UTAH COURT OF APPEALS

JESSE H. DANSIE FAMILY TRUST,[1]
Petitioner,
*v.*
PUBLIC SERVICE COMMISSION AND HI-COUNTRY ESTATES
HOMEOWNERS ASSOCIATION,
Respondents.

Opinion
No. 20140653-CA
Filed May 26, 2016

Original Proceeding in this Court

John S. Flitton, Attorney for Petitioner

Melanie A. Reif, Attorney for Respondent Public
Service Commission

Sean D. Reyes and Brent A. Burnett, Attorneys for
Respondent Division of Public Utilities

J. Craig Smith, Debra K. Caldwell, and Adam S.
Long, Attorneys for Respondent Hi-Country Estates
Homeowners Association

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.

VOROS, Judge:

¶1     The Jesse H. Dansie Family Trust (the Trust) seeks review
of a final order of the Public Service Commission (the PSC),

---

1. Jesse Rodney Dansie filed this petition for review when he
was trustee of the Jesse H. Dansie Family Trust. He resigned as
trustee in January 2015, and the Trust was substituted as the real
party in interest in this proceeding.

which approved a rate case for the Hi-Country Estates Homeowners Association (the Association). We decline to disturb the PSC's order.

BACKGROUND

¶2     The events leading to this case began in 1977, when Jesse H. Dansie leased the use of a well on his property to Gerald Bagley, the original developer of Hi-Country Estates. The Well Lease allowed Bagley to connect Hi-Country's water system to Dansie's well for ten years. In return, Dansie received an initial payment and "monthly rental" fees, plus water and a number of residential hook-ups free of charge. Eight years later, Dansie and Bagley amended the Well Lease. Under the amendment, Dansie received, in addition to his residential hook-ups, "the right to receive up to 12 million . . . gallons of water per year from the combined water system at no cost for culinary and yard irrigation on the Dansie property." The amendment also stated that the Well Lease bound Bagley, Dansie, and their successors and assigns.

¶3     In 1985, Bagley created Foothills Water Company and, as Foothills, applied to the PSC to operate the water system as a public utility. *Hi-Country Estates Homeowners Ass'n v. Bagley & Co.* (*Hi-Country Estates I*), 2008 UT App 105, ¶ 4, 182 P.3d 417. The PSC granted a certificate of public convenience and necessity (CPCN) to Foothills and authorized interim rates. *Id.* Later that year, Bagley transferred all interest and stock in Foothills to Dansie. *Id.* That same year, the Association sued, contesting Foothills's and Dansie's interests in the water system and seeking to quiet title in the Association. This case represents the most recent episode in the ensuing litigation between the Association, Foothills, Bagley, Dansie, and the Trust.

¶4     In March 1986, the PSC held general rate-setting hearings for Foothills and issued an order (the 1986 Order). In the course of determining "just and reasonable rates," the PSC considered

the Well Lease. The PSC found that the Well Lease was "grossly unreasonable, requiring not only substantial monthly payments, but also showering virtually limitless benefits on Jesse Dansie and the members of his immediate family." The PSC further determined that "it would be unjust and unreasonable to expect Foothills' . . . active customers to support the entire burden of the Well Lease Agreement." If Dansie and his family received water through the water system, the PSC ordered that they would have to pay "the actual pro-rata . . . costs for power, chlorination and water testing involved in delivering that water."[2]

¶5     In 1993, the Association assumed control of the water system and the CPCN and developed a new well, discontinuing the use of the Dansie well. *Id.* ¶ 5. A year later, the Association disconnected the water lines to the Dansie property after the Dansies allegedly refused to pay the costs required by the 1986 Order. *Id.* In 1996, the PSC decertified the Association as a public utility. *Id.*

¶6     In 2005, a trial court ruled that the Well Lease was an enforceable contract, neither void as against public policy nor unconscionable. *Id.* ¶ 6. We affirmed the trial court's order in *Hi-Country Estates I*, 2008 UT App 105, ¶ 1. We noted that after the PSC "revoked the status of the water system as a public utility . . . the PSC did not have jurisdiction over the water system" and "the 1986 PSC order was no longer binding." *Id.* ¶ 12 n.2. We therefore "interpret[ed] the Dansies' rights and obligations under the Well Lease according to its plain language" and concluded that under the plain language of the Well Lease, the Dansies were not required to pay the costs listed in the 1986

---

2. The PSC determined that, under the Well Lease, Foothills was responsible for the monthly lease payments, but Bagley was personally responsible for "any remaining obligations" and that the Dansies could seek reimbursement from Bagley for the costs of receiving water through the water system.

Order. *Id.*; *see also Hi-Country Estates Homeowners Ass'n v. Bagley & Co.* (*Hi-Country Estates II*), 2011 UT App 252, ¶¶ 10, 13, 262 P.3d 1188.

¶7 After we issued our decision in *Hi-Country I*, the Dansies filed a motion in the trial court "to modify the Final Judgment to conform to footnote 2 of our opinion as they understood it." *Hi-Country Estates II*, 2011 UT App 252, ¶ 4. The trial court denied the motion and the Dansies once again appealed to this court. *Id.* We affirmed the trial court and explained that "the effect of the Final Judgment . . . is that the Dansies are, going forward, entitled to their contractual rights to free water and free hook-ups *unless the PSC intervenes and determines otherwise.*" *Id.* ¶¶ 11, 14 (emphasis added).

¶8 In the wake of *Hi-Country Estates II*, the Association presented evidence that it was providing water service to customers outside its boundaries and requested reinstatement of the water system's CPCN. The PSC reinstated the CPCN, bringing the water system again within the PSC's jurisdiction. One year later, the Association filed a general rate case application with the PSC. The application included a transportation fee specific to "well lease customers"—in other words, a fee specific to members of the Trust. The Association asserted that it was under no obligation to serve the Trust members, but it included the fee in the proposed rates as a contingency to cover the costs it would incur should the PSC determine such an obligation existed. Jesse Rodney Dansie, who at the time was the trustee, filed a petition to intervene, which the PSC granted.

¶9 The PSC scheduled a general rate increase hearing for March 4, 2014, and a public witness hearing one day later. Dansie filed both direct testimony and surrebuttal testimony, addressing the Well Lease and whether the Association's service area included certain parcels of his property. He asserted that *Hi-Country Estates I* and *Hi-Country Estates II* prevented abrogation of the Well Lease; that he had a right to 12 million

gallons of water per year from the Association at no cost, including transportation fees; and that the proposed "well lease rate" of $3.85 per 1,000 gallons was prohibited under the Well Lease. Dansie also stated that he was a customer of the Association and that his "back 80" acres were included in the original water system service agreement and should continue to be.

¶10    The day before the scheduled rate hearing, the Trust's attorney filed a motion for continuance. The motion stated that Dansie had suffered a fall, was hospitalized, and thus would be unable to attend the March 4 hearing. On March 4, instead of holding the rate hearing, the PSC convened a hearing to discuss Dansie's motion. The Trust's attorney appeared on behalf of Dansie. After a discussion that included consideration of the PSC's statutory deadline of 240 days and the lengthy history of litigation over the water system, the parties proposed to hold the rate hearing one week later. The Trust's attorney suggested the new date and stated that if Dansie could not attend, his brother "would . . . be willing to testify in his place," and that if Dansie's brother testified, the Trust would not appeal based on Dansie's absence. The Administrative Law Judge stated that she was "not addressing that issue per se," but she "recognize[d]" what the Trust's attorney had said. The PSC rescheduled the hearing.

¶11    On March 11, 2014, the parties met again for the rate hearing. Dansie was still in the hospital, but the Trust's attorney again appeared on his behalf. Dansie's brother did not attend, and the Trust's attorney moved to continue the hearing until Dansie himself could attend, which the Trust's attorney acknowledged could be six weeks or more. After discussing the motion with the parties, the PSC denied the motion and proceeded with the hearing, but offered the parties, including Dansie, the opportunity to file post-hearing briefs and responses to any new issues raised in the hearing. The Trust's attorney agreed to proceed with the option to file a post-hearing brief and, at the end of the hearing, stated, "I think we'll file a post

hearing brief probably within the next week or so." However, the Trust did not file a post-hearing brief.

¶12 Two months later, the PSC issued its order. The PSC concluded, as it had in the 1986 Order, that the Well Lease was "void and unenforceable as against the public interest":

> There has been no evidence presented that would persuade us to overturn our prior 1986 order finding that the Well Lease . . . is unreasonable, unjust, and not in the public interest. Therefore, based on the [PSC]'s earlier order, the lack of contrary evidence, and the Division's evidence and recommendation in this docket, we decline to deviate from our prior precedent. We find the Well Lease . . . is void and unenforceable as against the public interest. Thus, the [Association] has no obligation to provide water to Mr. Dansie, and therefore, the [Association's] proposed fee of $3.85 per 1,000 gallons to deliver water to Mr. Dansie is moot and disallowed from the tariff.

The PSC also concluded that Dansie's western-most 40-acre parcel falls within the Association's service area, but the remainder of his "back 80" acres does not.

¶13 Dansie requested rehearing and reconsideration. The PSC denied these requests. The Trust timely petitioned this court for judicial review of the PSC's order.

ISSUES

¶14 The Trust raises three issues for review. First, the Trust contends that the PSC exceeded its jurisdiction by declaring the Well Lease void and unenforceable. Second, the Trust contends that the PSC improperly approved the Association's rate case without then-trustee Jesse Rodney Dansie's presence at the rate

case hearings. Finally, the Trust contends that the PSC improperly excluded certain property from the rate case. The Trust argues that the property was owned by Dansie and had been covered under the original service area for the water system.

ANALYSIS

## I. The PSC Did Not Exceed Its Jurisdiction

¶15 The Trust contends that the PSC exceeded its jurisdiction when it concluded that the Well Lease "is void and unenforceable as against the public interest." The Trust argues that in a prior iteration of this dispute, this court determined that the Well Lease "is valid, binding and enforceable" and that the PSC's 1986 Order was no longer in force. The Trust also argues that the PSC's "authority to modify contracts is not boundless" and that the Well Lease falls outside of the PSC's authority. "The question of [PSC] jurisdiction turns on statutory interpretation and therefore presents a question of law that we review for correctness." *Bear Hollow Restoration, LLC v. Public Serv. Comm'n*, 2012 UT 18, ¶ 16, 274 P.3d 956 (citation and internal quotation marks omitted).

¶16 "To [e]nsure efficient use of resources, public utilities . . . are[] granted exclusive franchises and regulated to prevent exploitation by the producer while encouraging economies of scale." *Garkane Power Ass'n v. Public Serv. Comm'n*, 681 P.2d 1196, 1200 (Utah 1984) (per curiam). "[T]he Legislature may in the exercise of its police power fix or determine rates and charges of public utilities doing business within the state, or delegate the power to do so, and within limitations and restrictions regulate and control their service . . . ." *Logan City v. Public Utils. Comm'n of Utah*, 271 P. 961, 970 (Utah 1928).

¶17 The legislature delegated to the PSC "power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public

utility in this state, and to do all things . . . necessary or convenient in the exercise of such power and jurisdiction." Utah Code Ann. § 54-4-1 (LexisNexis 2010); *see also Bear Hollow*, 2012 UT 18, ¶ 16. The PSC's "general jurisdiction is 'broad and sweeping in scope.'" *Beaver v. Qwest, Inc.*, 2001 UT 81, ¶ 10, 31 P.3d 1147 (quoting *Utah Power & Light Co. v. Public Serv. Comm'n*, 152 P.2d 542, 555 (Utah 1944)). This "broad authority over public utility operations" allows the PSC "to protect the public interest." *Utah Cable Television Operators Ass'n v. Public Serv. Comm'n*, 656 P.2d 398, 401 (Utah 1982). The PSC protects the public interest by ensuring the utilities' "continued ability . . . to serve the customers who rely upon them for essential service and products" and "balancing the interest of having financially sound utilities that provide essential goods and services against the public interest of having goods and services made available without discrimination and on the basis of reasonable costs." *Garkane Power*, 681 P.2d at 1207.

¶18    "In addition to broad powers, the legislature specifically outlined rate making as a delegated function to the [PSC]" in Utah Code section 54-4-4. *Beaver*, 2001 UT 81, ¶ 11. If, in performing that function, the PSC "finds after a hearing that . . . contracts affecting the rates . . . are: (A) unjust; (B) unreasonable; (C) discriminatory; (D) preferential; or (E) otherwise in violation of any laws," the PSC "shall . . . determine the just, reasonable, or sufficient rates . . . or contracts to be thereafter observed and in force." Utah Code Ann. § 54-4-4(1)(b)(i). "[I]n the fixing of rates for public utility service . . . the [PSC] is not limited or controlled by the provisions of antecedent contracts, but is at liberty to disregard such contracts altogether if they come in conflict with what the [PSC] finds to be a reasonable rate under the conditions existing at the time of making the investigation." *Utah Hotel Co. v. Public Utils. Comm'n of Utah*, 204 P. 511, 515 (Utah 1922). "[I]f it is the policy of the state to regulate the rates for the services rendered by public utilities through the exercise of the police power, then contracts respecting rates will not prevent the state from subsequently authorizing a change in the rates stated in the contract so as to prevent them from being

unfair or discriminatory on the one hand or from being unjust or confiscatory upon the other." *City of St. George v. Public Utils. Comm'n*, 220 P. 720, 722 (Utah 1923).

¶19     In 1996, the PSC "revoked the water system's status as a public utility." *Hi-Country Estates I*, 2008 UT App 105, ¶ 5, 182 P.3d 417. Over the next 16 years, the Association operated the water system as a private nonprofit corporation. Because it was no longer a public utility, neither statutes regulating public utilities nor the PSC's order applied to the Association. *Id.* ¶ 12. But in 2012, the PSC reinstated the Association's CPCN, making the water system once again a public utility and placing the Association under the PSC's jurisdiction. *See* Utah Code Ann. § 54-4-1. The PSC ordered the Association to file a rate case, which in turn required the PSC to review the Well Lease. The PSC cited its 1986 Order,[3] "the lack of contrary evidence, and the Division [of Public Utilities'] evidence and recommendation" in concluding that the Well Lease "is void and unenforceable as against the public interest."

¶20     Before the PSC reinstated the CPCN and re-established its jurisdiction, this court reviewed the validity of the Well Lease. *See Hi-Country Estates II*, 2011 UT App 252, 262 P.3d 1188; *Hi-Country Estates I*, 2008 UT App 105. Interpreting the Well Lease

---

3. The Trust argues that the PSC's decision "relies heavily" on the 1986 Order. Although the PSC quoted the 1986 Order, the record shows that it primarily relied on evidence and testimony from the Division of Public Utilities. "The Division is charged with, inter alia, representing the public interest before the [PSC], investigating rate cases, making policy recommendations to the [PSC], and investigating compliance with [PSC] orders." *Mountain Fuel Supply Co. v. Public Serv. Comm'n of Utah*, 861 P.2d 414, 418 n.3 (Utah 1993); *see also* Utah Code Ann. § 54-4a-1 (LexisNexis 2010). The PSC was "persuaded by the Division's evidence that no costs associated with the Well Lease Agreement should be recovered through rates."

as an "agreement[] between private parties contracting for water service," *Hi-Country Estates I*, 2008 UT App 105, ¶ 12, we concluded that the Well Lease "was not void as against public policy" and that it "was not unconscionable," *Hi-Country Estates II*, 2011 UT App 252, ¶ 3 (citing *Hi-Country Estates I*, 2008 UT App 105, ¶¶ 13, 15). The Trust argues that our holding in those cases "reaffirm[ed] that the [Association] system is burdened with the obligation of the [Well Lease] Agreement." But "our opinion [in *Hi-Country Estates I*] wisely hazarded no guess as to whether the PSC could or would exert jurisdiction in the future, and thus made no effort to adjudicate the rights of the parties or the enforceability of the Well Lease going forward." *Id.* ¶ 10. And we took care to express no opinion as to whether, in the future, the PSC would re-assert jurisdiction and again prevent the Dansies from enjoying "free hook-ups and free water under the Well Lease." *Id.* ¶ 13.

¶21 The PSC has now re-asserted jurisdiction. Accordingly, it "is not limited or controlled by the provisions of antecedent contracts, but is at liberty to disregard such contracts altogether if they come in conflict with what the [PSC] finds to be a reasonable rate under the conditions existing at the time of making the investigation." *Utah Hotel Co.*, 204 P. at 515. Nothing in *Hi-Country Estates II* prevents this result; as explained above, its holding applied only so long as the PSC did not assert jurisdiction. We therefore conclude that the PSC did not exceed its jurisdiction, and we decline to disturb the PSC's decision that "the Well Lease Agreement is unreasonable, unjust, and not in the public interest."

## II. The PSC Adequately Addressed the Trustee's Inability to Attend the Rate Case Hearing

¶22 The Trust contends that "because of unforeseeable health reasons," then-trustee Jesse Rodney Dansie (the Trustee) could not attend the March 11, 2014 rate case hearing before the PSC. The Trust argues that without the Trustee's attendance,

"valuable and important rebuttal and cross-examination were not conducted or factored into the [PSC]'s findings."

¶23    We reject this claim as inadequately briefed. The Trust provides no "citations to the authorities" as required by rule 24 of the Utah Rules of Appellate Procedure. "Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 (citation and internal quotation marks omitted). "Utah courts routinely decline to consider inadequately briefed arguments." *State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 (citation and internal quotation marks omitted).

¶24    Although we decline to consider this argument on the merits, we note that the PSC treated the Trustee fairly. It originally scheduled the hearing for March 4, 2014. When the Trustee was unable to attend due to his hospitalization, the PSC continued the hearing one week. It did so with the agreement of all parties, including the Trust's attorney, who stated that March 11 was "acceptable" and that if the Trustee was still not available on that date, another member of the Trust would be able to testify. When the Trustee could not attend the March 11 hearing and no other member of the Trust appeared, the Trust's attorney asked the PSC to continue the hearing a second time, but the attorney did not know when the Trustee would be available. The Trust's attorney acknowledged at both hearings that the PSC "is statutorily required to issue a decision within 240 days" and was facing that deadline. *See* Utah Code Ann. § 54-7-12(3) (LexisNexis 2010). Additionally, prior to the March 4 hearing, the Trustee had submitted direct and surrebuttal written testimony. When he was unable to attend the March 11 hearing, the PSC gave the Trust the opportunity to file a post-hearing brief, which it did not do. Finally, the Trustee's absence did not disadvantage the Trust alone, but also other parties, because it gave the Trust the right to submit the Trustee's testimony in written form without cross-examination.

### III. The PSC Properly Excluded Dansie Property from the Service Area

¶25    The Trust next contends that the PSC's order "excludes portions of the Dansie property from the proposed service area despite the fact that those lands were included in the [original] service area and specifically covered under the [Well Lease] Agreement." This argument is inadequately briefed. An adequately briefed argument "contain[s] the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). Further, "a party challenging a fact finding must first marshal all record evidence that supports the challenged finding." *Id.* "A reviewing court 'is not simply a depository in which the appealing party may dump the burden of argument and research.'" *Hampton v. Professional Title Servs.*, 2010 UT App 294, ¶ 2, 242 P.3d 796 (quoting *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988)).

¶26    The Trust identifies no provision of the Well Lease or any other evidence that would obligate the Association to provide water service to the excluded portions of the Dansie property. The PSC noted that the Trust "presented no basis in law or fact for altering" the Association service area and we conclude the same on appeal.

### CONCLUSION

¶27    We decline to disturb the order of the PSC.

———————