# GARKANE POWER CO., Inc., v. PUBLIC SERVICE COMMISSION.

No. 6186.   Decided March 23, 1940.   (100 P. 2d 571.)

*Vincent D. Nicholson,* of Washington, D. C., and *W. W. Porter,* of Panguitch, for plaintiff.

*Joseph Chez,* Atty. Gen., and *John D. Rice,* Asst. Atty. Gen., for defendant.

WOLFE, Justice.

This case is before us on a Writ of Certiorari. The question to be resolved is whether or not the defendant, Public Service Commission, has jurisdiction over the plaintiff, Garkane Power Company, Inc. This depends on whether Garkane is a "public utility" as that term is used in our statute, Sec. 76-2-1 (28), R. S. U. 1933.

Garkane Power Company, Inc., is a nonprofit membership corporation, organized pursuant to Chap. 6 of Title 18, R. S. U. 1933, for the purpose of generating and transmitting to its members, electric energy. Certain facilities for carrying out this purpose have been erected. Franchises have been granted to Garkane by the towns it proposes to serve and it has obtained right-of-ways for its power lines from the towns and counties in which it will operate, and from various private individuals. On June 1, 1939, Garkane filed with the Public Service Commission an application for exemption from obtaining a Certificate, and, in the alternative, for a Certificate of Convenience and Necessity. Hearings were held on said application and a Report and Order were entered by the Commission on August 10, 1939, in which the Commission assumed jurisdiction over Garkane and granted the Certificate. Garkane applied for a rehearing but it was denied, September 6, 1939; consequently the case was brought before this Court on the question of jurisdiction.

There is little or no dispute as to the facts in this case; the parties disagree as to the significance of those facts and as to the interpretation of certain controlling statutes.

Sec. 3, Chap. 63, Laws of Utah 1935, provides that the Public Service Commission shall succeed to all powers, duties, and functions of the Public Utilities Commission, Title 76, R. S. U. 1933. Sec. 76-4-1, R. S. U. 1933 vests in the Public Utilities Commission "power and jurisdiction to supervise and regulate every *public utility* in this state." (Italics added.)

"The term 'public utility' includes every common carrier, gas corporation, *electric corporation*, telephone corporation, telegraph corporation, water corporation, heat corporation, and warehouseman *where the service is performed for, or the commodity delivered to, the public generally.*" (Italics added.) 76-2-1 (28), R. S. U. 1933.

An "electrical corporation" is a person, group of persons, or a corporation which owns, controls, operates, or manages an electric plant or in anywise furnishes electric power "*for public service* within this state." 76-2-1 (20), R. S. U. 1933.

It is clear and undisputed that Garkane will "own, control, operate, and manage an electric plant." Assuming that the phrases "public service" and "for service to the public generally," have the same meaning the sole question is whether Garkane will furnish electric power "for public service," or "to the public generally."

The record shows that Garkane was incorporated for the purpose of generating or acquiring electric energy to distribute and sell to its *members only.* The Corporation is nonprofit, and any excess money collected is to be returned or credited to the member consumers pro rata on the basis of the amount of electrical energy consumed during the period in which the excess was collected. The Corporation is specifically prohibited from rendering service for or to the public. Membership in Garkane is restricted to persons, firms, corporations, or bodies politic who (1) pay membership fee ($5) ; (2) agree to purchase the minimum amount of electricity monthly which is set by the Corporation; and

(3) agree to comply with Articles of Incorporation, By-Laws, and rules and regulations of the Board of Directors, *provided* he or it be accepted for membership by vote of the board or of the members.

In *State* v. *Nelson,* 65 Utah 457, 238 P. 237, 239, 42 A. L. R. 849, the question of the jurisdiction of the Public Utilities Commission over the activities of a person who, under contract, transported guests to and from a summer resort, was presented to this court. In holding that such transportation service did not constitute Nelson a common carrier, this court said:

"* * * public service [is] serving and carrying all persons indifferently who apply for passage or for shipment of goods or freight. * * * Public service, as distinguished from mere private service, is thus a necessary factor to constitute a common carrier. * * * So, if the business or concern is not public service, where the public has not a legal right to the use of it, where the business or operation is not open to an indefinite public, it is not subject to the jurisdiction or regulation of the commission. *Humbird Lumber Co.* v. *Public Utilities Comm.,* 39 Idaho 505, 228 P. 271; *Story* v. *Richardson,* 186 Cal. 162, 198 P. 1057, 18 A. L. R. 750."

And we pointed out that Nelson hauled only a certain restricted group of people (guests of the resort) and did not hold himself out as willing to haul anyone who applied. The distinction there made is valid, and is conclusive of this case. Garkane does not propose to hold itself out to serve all who apply and live near its lines; its very charter which gives it existence restricts its service to a certain group (members). It does not propose to serve "the public generally," but only to serve its members.

"The test * * * is * * * whether the public has a legal right to the use which cannot be gainsaid, or denied, or withdrawn, at the pleasure of the owner." *Farmers' Market Co.* v. *R. R. Co.,* 142 Pa. 580, 21 A. 902, 989, 990.

"The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefiniteness or unrestricted quality that gives it its public character." *Thayer* v. *California Development Board,* 164 Cal. 117, 127, 128 P. 21, 25.

But the Public Service Commission points out that membership in Garkane is easy to obtain and that actually the Corporation solicits membership and has apparently accepted thus far all who paid their fee and agreed to pay the monthly minimum. This does not affect the relationship of the Corporation with its members nor does it change the character of the service to be rendered.
The distinction between a public service corporation and a cooperative is a qualitative one. In a cooperative the principle of mutuality of ownership among all users is substituted for the conflicting interests that dominate the owner vendor—non owner vendee relationship. In a cooperative all sell to each. The owner is both seller and buyer. So long as a cooperative serves only its owner-members and so long as it has the right to select those who become members, ordinarily it matters not that 5 or 1000 people are members or that a few or all the people in a given area are accorded membership, provided the arrangement is a bona fide cooperative or private service organization and is not a device prepared and operated to evade or circumvent the law. The courts will always scrutinize closely to determine whether or not a certain organization or method of conduct has for its purpose evasion of the law, and where it finds such evasion will declare such organization to be what it truly is. *Davis* v. *People ex rel. Public Utilities Commission,* 79 Colo. 642, 247 P. 801. But in this case we find no evidence or likelihood that Garkane was organized to, or intends to, evade the law. It was organized by a group of consumers who had for years desired suitable electric energy in their homes, to procure and transmit to themselves such service. Garkane proposes to render service only in areas which heretofore have had no, or very inadequate, electrical service.

In its argument the Commission contends that as a matter of policy it would be bad to allow cooperatives such as Garkane to escape supervision and regulation on the theory, largely, that they must be protected from themselves or the members be protected from mismanagement. On the contrary it appears that there is no need for regulation of true

cooperatives. The theory of public utility regulation is based on a recognition that most public utilities are monopolistic, that their services are necessary or convenient to the residents of the area, and that because of the conflict of interest between the utility and its customers or consumers there is likely to arise situations where rates are so high as to deny service to many, or so low as to deny a fair return on its investment to the utility and its stockholders which in turn would tend to result in inadequate service. Therefore, regulation is desirable to harmonize and balance these interests. The services of Garkane may tend to be monopolistic in the area served because there is no other adequate utility to serve the residents there and its services will be convenient and useful if not vital to those residents, but the third element is totally lacking. There is no conflict of consumer and producer interests—they are one and the same. If rates are too high the surplus collected is returned to the consumers pro rata. If rates are too low the consumers must accept curtailed service or provide financial contribution to the Corporation. If service is not satisfactory the consumer-members have it in their power to elect other directors and demand certain changes. Resort to equity, as in the case of all mutuals, may be had if one group of members seeks to over-reach the others. The function of the Commission in approving rates, capital structure, etc., is unneeded by Garkane, its members, or the communities which it will serve.

To the argument that Garkane may at some future time become an investment business venture and sell power to non-members the answer is: when such change occurs it will be time enough for the Commission to take jurisdiction and to regulate its activities. Under Garkane's Articles, only consumers may be members and each consumer unit is limited to one membership. The many cases cited by counsel to the effect that what a corporation actually does, and not what its Articles say it can do, determines its status as a public utility, are accepted, but no showing has been made that Garkane is operating, or will oper-

ate, in violation of its Articles. So long as Garkane operates in accordance with its Articles of Incorporation and By-Laws there appears to be no basis for jurisdiction over it by the Public Service Commission.

Nor do the other reasons assigned by counsel appear to establish that the Commission should have jurisdiction over Garkane. It is conceded that "the public" does not mean all of the people in the state or in any county or town. "The public" is a term used to designate individuals in general without restriction or selection. A service organization which holds itself out to serve all who wish to avail themselves of its services might be a public utility even though only one or two people actually receive service. On the other hand, as was held in *Dairymen's Co-operative Sales Ass'n v. Public Service Comm.*, 318 Pa. 381, 177 A. 770, 98 A. L. R. 218, the hauling of milk for some 17,000 members of the Association was not an undertaking to haul for all persons indiscriminately, i. e., for the public. As said before, mere number is no criterion.

Counsel's contention that the activities of Garkane will be affected with a public interest cannot be denied. But that which may be affected with a public interest is not necessarily a public utility. *Nebbia v. New York*, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469. What does not appear is that Garkane is a public utility and, as such, is subject to Commission regulation.

That it runs its lines along public roads under permission of the county or town is no indication that Garkane is a public utility any more than the permissive building on the public right-of-way of a platform for the collection of milk indicates that a dairy farmer is a public utility. And if we accept the test that the loan of public funds to a cooperative means that it must serve the public generally and is therefore a public utility, we must also class as public utilities, bound to serve the public, all the many hundreds or thousands of business organizations which have borrowed from the Federal Government through R. F. C., P. C. C., etc.

The Public Service Commission of West Virginia, a body of equal dignity with our Utah Public Service Commission, in considering an application for exemption from its jurisdiction, held, in *Re Harrison Rural Electrification Asso. Inc.,* 24 P. U. R., N. S., 7, that a cooperative power association in all essential respects like Garkane was "a public utility within the purview of the state's statute." In this case counsel for the Commission has adopted much of the reasoning of the West Virginia Commission, that the business is "affected with a public interest," that since a loan of public funds has been secured by the cooperative it must serve all persons desiring service, that membership is easy to secure, that lines will run along and across public roads, etc. But the holding of another state commission is no more convincing than, nor even as fully convincing as, the holding of our own Commission. The action of the West Virginia Commission appears, moreover, to be contrary to the prevailing practice of most state commissions, and we believe that there is a ready answer to each of the reasons assigned for its holding, some of which we have heretofore answered. Others are answered by the reasoning in *Inland Empire Rural Electrification, Inc.* v. *Dept. of Public Service of Washington,* 199 Wash. 527, 92 P. 2d 258, in which the Washington Supreme Court held that a rural electric service cooperative was not a public utility under Washington's laws. We believe the reasoning in the Inland Empire case to be convincing and sound.

We hold, therefore, that a non-profit electric cooperative which serves only its members, and is completely consumer owned with each consumer limited to one membership, is not a public utility within the purview of our statute.

Defendant, Public Service Commission is directed to vacate its Order of August 10, 1939 in which it assumed jurisdiction over Plaintiff, Garkane Power Company, Inc.

Costs to Plaintiff.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.