2012 UT 18

**BEAR HOLLOW RESTORATION, LLC,**
Petitioner and Appellant,

v.

**PUBLIC SERVICE COMMISSION
OF UTAH, et al., Respondents
and Appellees.**

No. 20100329.

Supreme Court of Utah.

March 23, 2012.

J. Craig Smith, Daniel J. McDonald, Kathryn J. Steffey, Salt Lake City, for petitioner.

David R. Clark, Salt Lake City, for respondent, Public Service Commission.

John S. Flitton, Jr., Lara A. Swensen, Park City, for respondent, Summit Water Distribution Company.

Brent O. Hatch, Mitchell A. Stephens, Salt Lake City, for respondents, Leon H. Saunders, Stuart A. Knowles, and Lawrence R. Knowles.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This is an appeal from the Public Service Commission's dismissal for lack of jurisdiction of a Complaint and Request for Agency Action. The complaint requested a review and investigation of Summit Water Distribution Company's (SWDC) exemption from public regulation and was filed by one of SWDC's minority shareholders, Bear Hollow. The Commission dismissed the complaint on the basis that SWDC was not a public utility, and therefore, the Commission did not have jurisdiction. We affirm the Commission's dismissal.

## BACKGROUND

¶ 2 Summit Water Distribution Company was formed in 1979 as a nonprofit mutual water company to provide water to its shareholders in unincorporated areas of Summit County. In 1989, the Public Service Commission issued a letter of exemption from public regulation because SWDC operated as a cooperative association that provided culinary water to only its members and did not serve the public generally. Since that time, the Commission has reviewed SWDC's exemption three times. On each occasion, the Commission has found no reason to alter SWDC's exempt status.

¶ 3 SWDC's Articles of Incorporation create four classes of stock: (1) Class A development shares, (2) Class B use shares, (3) Class C irrigation shares, and (4) Class D snowmaking shares. Only Class A development shares and Class B use shares have voting rights (one vote per share of each). The holders of these classes of stock may vote to elect SWDC's Board of Directors. Shareholders pay a monthly rate for the water they consume.

¶ 4 As compared to the other types of shares, Class A shareholders are unique because their shares do not permit them to consume water provided through SWDC. Rather, SWDC issues Class A shares to a developer when the developer conveys water rights to SWDC. Thereafter, when the developer sells a development lot to a prospective homeowner, the sale transfers Class A shares sufficient to meet the water needs of the property conveyed. Upon the sale of the lot, the Class A development shares convert to Class B use shares. Class B shares are appurtenant to and inseparable from the land to which they provide a right to water.

¶ 5 Individual respondent Mr. Leon H. Saunders is founder, president, member of the Board of Directors, and largest Class A shareholder of SWDC. Bear Hollow alleges that as of 2002, Mr. Saunders owned 42.5 percent of all Class A shares and 27.5 percent of all outstanding SWDC shares, but only 1.5 percent of all Class B use shares.

¶ 6 Individual respondent Mr. Stuart Knowles is also a member of the SWDC Board of Directors and is the second largest Class A shareholder of SWDC stock. Bear Hollow alleges that as of 2002, Mr. Knowles owned 37.6 percent of all Class A shares and 24.4 percent of all outstanding SWDC shares.

¶ 7 Mr. Saunders and Mr. Knowles have joined forces to form a partnership, SK Resources. As of 2002, through the combined holdings of Mr. Saunders and Mr. Knowles, SK Resources controlled 80.1 percent of all Class A shares and 51.9 percent of all outstanding SWDC shares. Because of its voting block, SK Resources exerts considerable influence over SWDC affairs.

¶ 8 SK Resources markets the water rights it owns, represented by SWDC Class A shares, to other developers in SWDC's service area. In doing so, it competes with other providers of culinary water, publicly regulated or otherwise. When SK Resources sells Class A development shares to a developer, it customarily requires the purchasing developer to enter into "development agreements" in which the purchased Class A shares are immediately attached to and become appurtenant to the land being developed. Consequently, the purchasing developer cannot transfer the Class A development shares without transferring the underlying land, regardless of whether the

land is actually developed or the shares are ever converted to Class B use shares. As a result, the transfer of most Class A shares not held by SK Resources is limited, while SK Resources may freely transfer its Class A shares not tied to any particular parcel of land.

¶ 9 Petitioner Bear Hollow is a minority Class A shareholder of SWDC. Bear Hollow acquired its Class A shares in the bankruptcy proceedings of its predecessor-in-interest, which had originally purchased the Class A shares from SK Resources in anticipation of developing certain real property. In its original transaction with SWDC, Bear Hollow's predecessor-in-interest entered into a development agreement, as described above, that tethered the Class A shares in appurtenancy to the land being developed. After Bear Hollow bought the development, it found that it owned more Class A shares than it needed to complete the development. As a result, in March 2009, Bear Hollow agreed to sell its surplus Class A development shares to Park City, despite the development agreement binding the shares to the underlying land. Thereafter, Bear Hollow repeatedly requested that SWDC amend the development agreement to permit Bear Hollow to transfer a portion of its Class A shares separately from the land to which they were attached. SWDC repeatedly declined the request, stating that the proposed amendment is contradictory to the SWDC bylaws and the interests of other shareholders. Without SWDC's authorization, Bear Hollow cannot transfer its surplus shares.

¶ 10 After SWDC refused to amend Bear Hollow's development agreement to permit it to sell its surplus shares, Bear Hollow petitioned the Public Service Commission to re-evaluate SWDC's exempt status under the now-repealed rule R746–331–1. Bear Hollow also requested that the Commission regulate both SWDC and individual respondents Mr. Saunders and Mr. Knowles because of their voting control and purported manipulation of SWDC affairs for their own profit.

¶ 11 Bear Hollow alleged that due to SK Resources' considerable voting block and influence over SWDC operations, SK Resources has issued additional Class A shares to itself or to entities it controls. As a result, Bear Hollow alleged that somewhere between 1,500 and 10,000 Class A shares are at risk of not being supported by sufficient water if they are all converted to Class B use shares. In contrast, SK Resources maintains that the shares it owns have been obtained in accordance with SWDC Articles of Incorporation and bylaws through the conveyance of additional water rights to SWDC.

¶ 12 SWDC and individual respondents Mr. Saunders and Mr. Knowles moved to dismiss Bear Hollow's complaint. The Commission granted the motion to dismiss. It stated that there was nothing in the complaint that alleges that SWDC serves the general public and that "[a]bsent any [factual] allegation ... that Summit serves those who are not shareholders, the Commission cannot assert jurisdiction—even for an investigation, and must dismiss." In addition, the Commission ruled that it did not have jurisdiction to determine whether SWDC or individual shareholder actions violated laws governing nonprofit corporations organized, registered, and in good standing with the state of Utah.

¶ 13 Following dismissal, Bear Hollow filed an Amended Complaint and a Motion to Reconsider with the Commission. On March 29, 2010, the Commission denied the request for rehearing and refused to consider the Amended Complaint because it had already dismissed the action.

¶ 14 Additionally, in March 2010, the Commission Administration filed notice of a proposal to repeal rule R746–331–1, the rule under which Bear Hollow had filed its petition. The notice was posted in the Utah State Bulletin in April. In its notice, the Commission stated that repeal was necessary because the considerations in the rule that were meant to provide guidance as to whether an entity served the public generally, and was therefore a public utility subject to regulation, did not relate to statutory provisions. It further stated that application of the rule had caused confusion in the Commission's supervision of water companies. The Commission concluded that the repeal was permissible without formal rulemaking procedures because the rule merely gov-

erned internal administrative procedures that attempted to enact criteria from underlying case law defining public utilities and that repeal of the rule did not affect the law upon which the rule was based.

¶ 15 Bear Hollow appeals the Commission's rulings and raises the following issues: (1) whether the Commission erred when it ruled that the complaint did not sufficiently allege facts that, if proven, would bring SWDC within the definition of a public utility that served the public generally; (2) whether the Commission erred when it ruled that it could not assert jurisdiction over individual shareholders even though the complaint alleges that those shareholders have voting control over SWDC; (3) whether the Commission's repeal of rule R746–331–1 was de facto rulemaking because it reflected a fundamental policy change, and as such, the Commission was required to comply with the Administrative Rulemaking Act; and (4) whether the Commission acted reasonably and rationally when it declined to consider Bear Hollow's Amended Complaint filed after the initial complaint was dismissed. We have jurisdiction to review final orders of the Public Service Commission under Utah Code section 78A–3–102(3)(e)(i).

## STANDARD OF REVIEW

■■■ ¶ 16 "The question of Commission jurisdiction turns on statutory interpretation and therefore presents a question of law that we review for correctness."[1] The application of the Utah Administrative Rulemaking Act to Commission actions is also a question of law that we review for correctness, granting no deference to the Commission's determinations.[2] Additionally, "[w]hen reviewing an agency's application of its own rules, we will not disturb its interpretation or application of its rules unless its determination ex-

ceeds the bounds of reasonableness and rationality."[3]

## ANALYSIS

¶ 17 We affirm the Commission's decisions on each of the issues presented. First, we hold that the Public Service Commission properly dismissed Bear Hollow's complaint for lack of jurisdiction because none of the facts alleged would support a finding that SWDC served the public generally or could otherwise be denominated a public utility. Second, we hold that the Commission properly dismissed the complaint against the individual SWDC shareholders Mr. Saunders and Mr. Knowles because Commission jurisdiction could never extend to a shareholder of an entity over which the Commission has no jurisdiction. Third, we hold that the repeal of rule R746–331–1 need not comply with the Administrative Rulemaking Act because it did not affect any policy or substantive law, but merely reflected a change of internal procedures. And fourth, we hold that the Commission was reasonable and rational when it declined to consider Bear Hollow's Amended Complaint because, while it may consider amended pleadings after the deadline for responsive pleadings has passed, it is not required to do so and may decline to allow amendment in its discretion.

## I. UNDER THE FACTS ALLEGED IN THE COMPLAINT, SWDC IS NOT SUBJECT TO PUBLIC SERVICE COMMISSION JURISDICTION BECAUSE IT IS NOT A PUBLIC UTILITY AND DOES NOT PROVIDE SERVICE TO THE PUBLIC

■■■ ¶ 18 "[T]he [Public Service] Commission has no inherent regulatory powers other than those expressly granted or clearly implied by statute."[4] Utah Code section 54–

---

1. *Heber Light & Power Co. v. Utah Pub. Serv. Comm'n*, 2010 UT 27, ¶ 6, 231 P.3d 1203.

2. *Utah Chapter of the Sierra Club v. Air Quality Bd.*, 2009 UT 76, ¶ 50, 226 P.3d 719 (noting that application of the Utah Administrative Rulemaking Act depends upon "whether an agency action amounts to a rule," which is "[d]efined both statutorily and in case law" and both of which we review for correctness).

3. *McBride v. Motor Vehicle Div. of Utah State Tax Comm'n*, 1999 UT 9, ¶ 12, 977 P.2d 467 (plurality opinion) (internal quotation marks omitted).

4. *Heber Light & Power Co. v. Pub. Serv. Comm'n*, 2010 UT 27, ¶ 17, 231 P.3d 1203 (internal quotation marks omitted).

4–1 grants the Commission "power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public utility in this state."[5] A public utility is defined by statute to "include[ ] every ... water corporation ... *where the service is performed for, or the commodity delivered to, the public generally.*"[6] Additionally, a water corporation is defined to include "every corporation and person, their lessees, trustees, and receivers, owning, controlling, operating, or managing any water system [7] *for public service* within this state."[8] Thus, the question of the Commission's jurisdiction over SWDC as a public utility hinges upon whether SWDC provides service to or delivers its water to the public generally.

¶ 19 In *Garkane Power Co. v. Public Service Commission,* we faced the issue of whether a nonprofit membership corporation providing electricity to its members furnished power for "public service" and/or "to the public generally."[9] There, we articulated that "[t]he test is whether the public has a legal right to the use which cannot be gainsaid, or denied, or withdrawn, at the pleasure of the owner."[10] We reasoned that "[t]he essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefiniteness or unrestricted quality that gives it its public character."[11]

¶ 20 In *Garkane,* we recognized that public utility services warranted regulation because of the conflict of interest created when a profit-driven corporation controls essential services needed by the public.[12] Acknowledging the potential for monopolistic coercion, we reasoned that regulation is desirable in such situations to harmonize and balance competing interests.[13]

¶ 21 In contrast, we found that in a true cooperative, monopolistic concerns and the conflict of interest between consumer and vendor are eliminated because the owners are both the buyers and sellers of their own services.[14] Thus, we held that a cooperative eliminates the danger of monopolistic coercion and is exempt from regulation because it does not serve the public generally when (1) there is "mutuality of ownership among all users [that] is substituted for the conflicting interests that dominate the owner vendor-non owner vendee relationship," (2) the "cooperative serves only its owner-members," and (3) the cooperative "has the right to select those who become members."[15]

### A. Mutuality of Ownership Among the Owner–Members of SWDC Eliminates Monopolistic Incentives

¶ 22 First, monopolistic incentives are eliminated when there is mutual ownership among all users of a water system because the owner-members have the power to set their own rates and manage their own services.[16] If rates are too low, the consumer-members must accept curtailed service or contribute to the cooperative to improve ser-

5. Utah Code § 54–4–1.

6. *Id.* § 54–2–1(16)(a) (emphasis added).

7. All parties concede that SWDC owns a "water system," defined as "includ[ing] all reservoirs, tunnels, shafts, dams, dikes, headgates, pipes, flumes, canals, structures, ... and personal property owned, controlled, operated, or managed in connection with or to facilitate the ... supply, distribution, sale, ... or measurement of water for ... beneficial use." *Id.* § 54–2–1(30)(a).

8. *Id.* § 54–2–1(29) (emphasis added).

9. 98 Utah 466, 100 P.2d 571, 572 (1940) (internal quotation marks omitted), *superseded by statute regarding electric companies as recognized in Cottonwood Mall Shopping Ctr., Inc. v. Pub. Serv.*

*Comm'n,* 558 P.2d 1331, 1332 (Utah 1977). Although *Garkane* is an old case, and has been superseded by statute regarding electric companies, the statutory language at issue in that case is identical to the current statute.

10. *Id.* at 573 (internal quotation marks omitted).

11. *Id.* (internal quotation marks omitted).

12. *See id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. *Garkane,* 100 P.2d at 573.

vices.[17] On the other hand, if rates are too high, the collected surplus is returned to the consumer-members pro rata.[18] Additionally, if consumer-members become dissatisfied with service, they "have it in their power to elect other directors and demand certain changes."[19] As a result, mutual ownership eliminates the policy justifications for regulation and such government interference becomes unwarranted.

■ ¶ 23 Bear Hollow alleges that there is no true mutuality of ownership because the pooled resources and voting block of SK Resources allow it to control SWDC affairs, and therefore other dissatisfied shareholders have no power to elect other directors or demand changes as required by *Garkane*. Bear Hollow's argument that SK Resources has considerably more voting power misapprehends the function of mutual ownership in a cooperative.

■ ¶ 24 Shareholders in a cooperative are not required to have the same amount of voting power. Rather the requirement of a cooperative is that shareholders' interests are proportionally represented and that they have a common interest.[20] Here, SK Resources has invested considerably more in SWDC than other shareholders. Consequently, SK Resources has accumulated a majority of shares representing both its greater right to water distributed by SWDC and a resultant greater interest in the direction of the same. Moreover, under the facts alleged, SK Resources has no incentive to use its voting power to further monopolistic objectives. Instead, its interests are aligned with those of other shareholders to provide adequate service at affordable rates. In furthering these interests, SK Resources increases the value and desirability of SWDC membership to the developers to which SK Resources markets its shares. Under the allegations of the complaint, SK Resources' voting power represents only its proportionate interest, and its interests are aligned

with those of other shareholders. Accordingly, the mutual ownership among SWDC shareholders is sufficient to give rise to a true cooperative that does not serve the public generally and is properly exempt from public regulation because SWDC's structure presents no risk of monopolistic coercion.

### B. SWDC Serves Only Its Owner–Members and Does Not Provide Service to the General Public

■ ¶ 25 Second, there is no monopoly of essential services needed by the public that warrants regulation when a cooperative's owners are its consumers and the cooperative serves only such owner-members.[21] A true cooperative only extends its benefit to a limited class of owner-members. This exclusive service to owner-members is incompatible with the concept of public service, which by definition may "not [be] confined to privileged individuals."[22]

■ ¶ 26 The Commission found that Bear Hollow did not allege that SWDC provides service to anyone but its members. Bear Hollow argues SWDC performs service for the public generally because it ultimately delivers water to individuals using public facilities and to renters who themselves are not shareholders. However, even under the facts alleged in Bear Hollow's complaint, the only entities obligated to pay SWDC rates and legally entitled to receive water are the underlying shareholders that own the public and rental facilities. The fact that those shareholders may permit the public to use the water to which the shareholders are legally entitled does not convert SWDC into a public utility. If such were the case, a shareholder who allows a guest to wash her hands or drink a glass of water could independently defeat the purposes of the entire cooperative and convert it into a public utility. As the Commission held, a shareholder entitled to water from SWDC that in turn allows members of the public (i.e., customers, patrons,

---

17. *Id.*

18. *Id.*

19. *Id.*

20. *See id.; see also* Utah Admin. Code R746–331–1.C (repealed June 30, 2010).

21. *Garkane,* 100 P.2d at 573.

22. *Id.* (internal quotation marks omitted).

tenants) to access its water does not become a public utility by virtue of such usage. Because only shareholders are legally entitled to water from SWDC and only shareholders pay for such water, there is no concern that SWDC will monopolistically raise rates or withhold service from the general public. Thus, the Commission correctly found that Bear Hollow failed to allege that SWDC provides service directly to anyone other than its shareholders, and therefore it does not serve the general public.

### C. SWDC Retains the Right to Select Its Owner–Members

¶ 27 Third, a cooperative is not subject to regulation as a public utility that serves the general public when it has the right to select those that become members.[23] A cooperative retains the right to select its members even though membership in the cooperative is easy to obtain.[24] Additionally, "it matters not that 5 or 1000 people are members or that a few or all the people in a given area are accorded membership." [25]

¶ 28 In Garkane, we held that a cooperative retained the right to select its members even though it had never denied membership to an applicant and it only required members to (1) pay a membership fee of five dollars, (2) agree to purchase a minimum monthly amount of services, and (3) agree to abide by the articles of incorporation and bylaws of the cooperative upon acceptance by a vote of the board of directors.[26] Under the pleadings before the Commission, SWDC retained the right to select cooperative members because it conditioned membership upon ownership of shares and compliance with the articles of incorporation and bylaws of the cooperative.

¶ 29 Bear Hollow alleges that SWDC cannot control to whom an existing shareholder sells his or her land and that subsequent purchasers acquire SWDC shares that are appurtenant to the land. As shareholders of SWDC, subsequent purchasers are members. Bear Hollow asserts that because

SWDC has no power to select subsequent purchasers who become members, its membership requirements are largely pretextual. While Bear Hollow dismisses this membership criteria as meaningless, it is sufficient to meet the requirements set forth in Garkane. The right of a cooperative to select its members does not have to be exercised on a case-by-case basis. Here, SWDC employs an objective method of membership selection and requires only that members acquire stock and abide by an internal set of rules to obtain a right to water. As the Commission correctly held, "[a]lthough [SWDC] might not have the ability to control to whom a shareholder sells its interest, [SWDC] does retain the power to reject anyone that is not willing to meet the requirements imposed on shareholders." Consequently, the Commission correctly held that "even if the requirements are minimal, so long as [SWDC] serves only its shareholders, it is not serving the public generally." In short, it is irrelevant to the public utility analysis how a member acquires his status (here by acquiring shares) so long as a member is bound by rights and duties that are different from those of nonmembers.

¶ 30 Under the alleged facts, SWDC members mutually own their cooperative, SWDC serves only its members, and SWDC has the right to select its members. As a result, the complaint does not allege that SWDC provides water for public service or to the public generally under Utah Code section 54–4–1. Because the pleadings present a scenario in which SWDC does not serve the public and there is no risk of monopolistic coercion of the public that would justify regulation, the Commission correctly dismissed Bear Hollow's complaint for lack of jurisdiction.

## II. THE COMMISSION DOES NOT HAVE JURISDICTION OVER THE INDIVIDUAL SHAREHOLDERS OF SWDC

¶ 31 Having concluded that SWDC is not a public utility under the facts alleged, the complaint cannot establish grounds upon

23. Id.

24. Id.

25. Id.

26. Id. at 572.

which to regulate SWDC's individual shareholders. The Commission held that "[t]he shareholders' mere interest·in [SWDC] is not enough to convey jurisdiction over them to the Commission, either to commence an investigation or to enter an order asserting jurisdiction sufficient to regulate them as public utilities." We agree with the Commission.

¶ 32 The primary purpose of the Commission is to fix the rates that a public utility may charge its customers.[27] In doing so, the Commission must balance the interests of the utility corporation and the interests of the public to which the utility provides essential services. The threshold question for rate-regulation of any utility is whether it provides service to the general public and whether regulation is necessary to protect the consumer.[28]

> [The Commission] certainly has considerable latitude in performing its rate-regulation function. Any activities of a utility that actually affect its rate structure would necessarily be subject to some degree to the [Commission]'s broad supervisory powers in relation to rates. The question, then, is whether the activity the Commission is attempting to regulate is closely connected to its supervision of the utility's rates and whether the manner of the regulation is reasonably related to the legitimate legislative purpose of rate control for the protection of the consumer.[29]

Here, the complaint fails to allege that SWDC provides service to the public that would warrant regulation. Consequently, we need not determine whether the Commission's regulatory authority extends beyond the corporate entity to reach its individual shareholders.[30]

## III. FORMAL RULEMAKING PROCEDURES WERE NOT REQUIRED TO REPEAL RULE R746–331–1 AND BEAR HOLLOW WAS NOT PREJUDICED BY THE RULE'S REPEAL

¶ 33 Utah law allows for judicial relief if a person has been substantially prejudiced by any agency action that is contrary to a rule of the agency or contrary to prior practice.[31] Additionally, "the Commission cannot reverse its long-settled position regarding the scope of its jurisdiction and announce a *fundamental policy change* without following the requirements of the Utah Administrative Rule Making Act." [32] However, formal rulemaking is not required when the change "applies only to internal agency management" [33] or when "an agency makes nonsubstantive changes in a rule." [34]

¶ 34 Under the Utah Administrative Rulemaking Act, when an agency makes, amends, or repeals a rule and that action reflects a fundamental policy change, it must among other things, file its proposal with the division,[35] publish the information,[36] and allow at

---

**27.** *Kearns–Tribune Corp. v. Pub. Serv. Comm'n,* 682 P.2d 858, 859 (Utah 1984).

**28.** *See* UTAH CODE § 54–4–1.

**29.** *Kearns–Tribune Corp.,* 682 P.2d at 860.

**30.** We note, however, that "[o]rdinarily a corporation is regarded as a legal entity, separate and apart from its stockholders." *Dockstader v. Walker,* 29 Utah 2d 370, 510 P.2d 526, 528 (1973). The fact that one or all of the shareholders may have the ability to vote and thereby manage and control the corporation would not bring the shareholders under the Commission's jurisdiction. Rather, it is the corporate entity owning and controlling the water system and employing that system for the retail sale of water to the public that is subject to the Commission's regulatory authority. *See* UTAH CODE § 54–2–1(29) (defining a water corporation subject to commission regulation as "every corporation and person ... owning, controlling, operating, or managing any

water system *for public service."* (emphasis added)).

This does not mean that Bear Hollow is left without a remedy if, as Bear Hollow alleges, Mr. Saunders and Mr. Knowles unjustifiably caused SWDC to issue them unwarranted shares. However, the Commission is not the forum to seek such remedy and matters of corporate governance are more appropriately litigated in a court of general jurisdiction.

**31.** UTAH CODE § 63G–4–403(4)(h)(ii)–(iii).

**32.** *Williams v. Pub. Serv. Comm'n,* 720 P.2d 773, 777 (Utah 1986) (emphasis added).

**33.** UTAH CODE § 63G–3–201(4)(a).

**34.** *Id.* § 63G–3–201(4)(d).

**35.** *Id.* § 63G–3–301(4)(a).

least thirty days for the public to comment on the proposal.[37] In contrast, when changes are nonsubstantive, advisory, or only affect internal agency procedures, they need only be filed with the division.[38]

¶ 35 Following our holding in *Garkane*, the Public Service Commission enacted rule R746–331–1 in an effort to articulate the considerations that determine whether an entity is serving the public and subject to Commission regulation. Under this rule, a cooperative was exempt from regulation if the Commission determined that (1) the entity was in good standing with the Division of Corporations, (2) the entity owned or adequately controlled the assets necessary to furnish culinary water service to its members, and (3) "voting control of the entity [was] distributed in a way that each member enjoy[ed] a complete commonality of interest." [39]

■■■ ¶ 36 In March 2010, after Bear Hollow filed its petition, the Commission Administration filed notice of a proposal to repeal rule R746–331–1. The notice was posted in the Utah State Bulletin in April.[40] In its notice, the Commission stated that repealing the rule was the best course to follow because the criteria for assessing jurisdiction were not related to statutory provisions and application of the rule had caused confusion in the Commission supervision of water companies.[41] The Commission concluded that repeal was permissible without formal rulemaking procedures because the rule included

criteria and internal considerations that were not directly related to the consideration of whether an entity was a public utility or was serving the general public.[42] In essence, the Commission thought that repeal of the rule was nonsubstantive because, despite its repeal, the underlying law as announced in *Garkane* was undisturbed.

¶ 37 The Commission dismissed Bear Hollow's claim in an order dated February 4, 2010, one month before it gave notice of its repeal of rule R746–331–1. Bear Hollow argues that the Commission engaged in de facto rulemaking because the Commission departed from both the repealed rule and its established interpretation of the rule.[43] Bear Hollow asserts that under the repealed rule, SWDC could not show that it owned water rights sufficient to furnish service to all shareholders if all Class A shares were converted into Class B use shares nor that voting control was distributed so that there was a commonality of interest among shareholders because of SK Resources' substantial voting block. As a result, Bear Hollow argues that it was prejudiced by the Commission's failure to follow formal rulemaking procedures because SWDC would not be exempt from regulation under the repealed rule.

¶ 38 The Commission's repeal of rule R746–331–1 did not constitute de facto rulemaking and did not prejudice Bear Hollow because the repeal did not reflect a fundamental policy change. When the Commission repealed rule R746–331–1, it did not

---

36. *Id.* § 63G–3–301(4)(c).

37. *Id.* § 63G–3–301(11).

38. *Id.* § 63G–3–201(4).

39. Utah Admin. Code R746–331–1.C (repealed June 30, 2010).

40. Utah State Bull., Apr. 15, 2010, at 35.

41. *Id.*

42. *Id.*

43. Bear Hollow argues that prior to repeal, the Commission relied on rule R746–331–1.C in *In re Petition for and Order to Show Cause Regarding Exemption From Commission Regulation of Boulder King Ranch Estates Water Company* and de-

termined that a culinary water corporation that served only its shareholders was nevertheless subject to Commission jurisdiction. There, the Commission analyzed the operation of the corporation and found that voting control was not distributed in such a way that created commonality of interest among the majority and minority shareholders. As a result, the corporation was not exempted from regulation under the rule.

As explained below, complete commonality of interest among shareholders as required under rule R746–331–1 and mutual ownership that eliminates monopolistic incentives as required under *Garkane* are articulations of the same test. Thus, *Boulder King* merely reflects the rationale of *Garkane* that a utility serving only its shareholders may still be subject to Commission jurisdiction where mutual ownership does not establish complete commonality of interest so as to eliminate the risk of monopolistic coercion.

change any substantive law regarding jurisdiction over public utilities. As the Commission stated in its notice, the repeal made no changes to the regulation of public utilities because the rule contained considerations that were not directly relevant to consideration of whether an entity is or is not a public utility.[44] Instead, "[r]epeal of the rule and direct application of the statutory provisions is . . . the better course to follow." [45]

¶ 39 Moreover, direct application of statutory provisions as construed in *Garkane* embraces both elements of the repealed rule that Bear Hollow argues that SWDC cannot meet. Under *Garkane*, an exempt cooperative must have "mutuality of ownership among all users [that] is substituted for the conflicting interests that dominate the owner vendor-non owner vendee relationship." [46] As discussed above in Part I.A. of this opinion, this includes the repealed rule's requirement that "voting control . . . is distributed in a way that each member enjoys a complete commonality of interest." [47] Additionally, there is nothing to suggest that SWDC does not own or adequately control assets necessary to furnish culinary water to its current members as required by the repealed rule. While Bear Hollow alleges that at some point in the future SWDC may not have adequate water rights to provide water for all of its members, that is not currently the case and a remote future possibility cannot be a reason for current regulation. As a result, even under the repealed rule, the allegations would not bring SWDC under the Commission's regulatory authority and therefore Bear Hollow was not prejudiced by the rule's repeal without formal rulemaking procedures.

## IV. THE COMMISSION DID NOT ERR IN DECLINING TO CONSIDER BEAR HOLLOW'S AMENDED COMPLAINT

¶ 40 Rule R746–100–3 provides that parties can amend initiatory pleadings "without leave of the Commission at any time before a responsive pleading has been filed or the time for filing the pleading has expired." [48] After the time for responsive pleadings has passed, "[t]he Commission *may* allow pleadings to be amended or corrected." [49] The permissive language of rule R746–100–3, as expressed by the word "may," indicates that amendment after the time for responsive pleadings is subject to the Commission's discretion.

¶ 41 Bear Hollow filed an Amended Complaint concurrent with a timely Request for Rehearing on March 4, 2010, one month after the Commission issued its Order to Dismiss and well after the time for responsive pleadings had passed. Bear Hollow argues that its Request for Rehearing filed concurrently with its Amended Complaint tolled the date upon which the agency decision became final.[50] Therefore, Bear Hollow argues that the Amended Complaint should have been allowed because it was filed within the statutory period for a rehearing.

¶ 42 Nonetheless, the Commission declined to consider the Amended Complaint. When reviewing an agency's application of its own rules, we employ "an intermediate standard, one of some, but not

---

44. Utah State Bull., Apr. 15, 2010, at 35.

45. *Id.* We also note that "the [Public Service] Commission has no inherent regulatory powers other than those expressly granted or clearly implied by statute." *Heber Light & Power Co. v. Public Serv. Comm'n*, 2010 UT 27, ¶ 17, 231 P.3d 1203 (internal quotation marks omitted). To the degree that rule R746–331–1.C expanded Commission authority to regulate entities not contemplated by our statutes as construed in *Garkane*, the rule was not enforceable.

46. *Garkane v. Pub. Serv. Comm'n*, 98 Utah 466, 100 P.2d 571, 573 (1940), *superseded by statute regarding electric companies as recognized in Cot-*

*tonwood Mall Shopping Ctr., Inc. v. Pub. Serv. Comm'n*, 558 P.2d 1331, 1332 (Utah 1977).

47. Utah Admin. Code R746–331–1.C (repealed June 30, 2010).

48. Utah Admin. Code R746–100–3.D.

49. *Id.* (emphasis added).

50. *Blauer v. Dep't of Workforce Servs.*, 2007 UT App 280, ¶ 9, 167 P.3d 1102 (explaining that a party may extend the time for filing a petition for judicial review by filing a timely request for reconsideration).

total, deference."[51]  Thus, we review the Commission's application of its own rules for "reasonableness and rationality."[52]

 ¶ 43 The Commission was both reasonable and rational when it declined to consider Bear Hollow's Amended Complaint. Relying on *Nichols v. State,* the Commission reasoned that similar to Utah Rule of Civil Procedure 15, under its administrative rules "an order of dismissal is a final adjudication, and thereafter a plaintiff may not file an amended complaint."[53]  We agree.

¶ 44 The fact that a petitioner is able to file for a rehearing is no different than a plaintiff's ability to file for a new trial, an amended judgment, relief from judgment, or an appeal under the rules of civil procedure. *Nichols* states that an order for dismissal is a final judgment regardless of any motion for reconsideration or appeal.[54]  The Commission applied that same standard here and determined that Bear Hollow's Amended Complaint should not be considered after the Order of Dismissal was entered, regardless of its Request for Rehearing.  Given the discretion permitted in considering amended pleadings under rule R746–100–3 and the Commission's principled reliance on *Nichols,* the Commission was reasonable and rational when it declined to consider Bear Hollow's amended pleadings after the Order of Dismissal.

### CONCLUSION

¶ 45 We hold that the allegations in Bear Hollow's complaint were insufficient to establish that SWDC served the public generally or that the Commission had jurisdiction.  Because the complaint failed to allege that SWDC served the public, it could not establish grounds for asserting jurisdiction over SWDC's individual shareholders.  Additionally, Bear Hollow was not prejudiced by repeal of Utah Administrative Rule R746–331–1 because the rule applied only to internal agency decisions and the underlying substantive law, as set forth in *Garkane,* remained in

place.  Finally, the Commission did not abuse its discretion when it refused Bear Hollow's Amended Complaint after the original complaint had been dismissed.  Accordingly, we affirm the Commission's decision.

Justice NEHRING authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice LEE and Judge CONNORS joined.

Having recused herself, Justice PARRISH did not participate herein;  District Judge DAVID M. CONNORS sat.

---

**51.** *Kent v. Dep't of Emp't Sec.,* 860 P.2d 984, 986 (Utah Ct.App.1993).

**52.** *Id.*

**53.** *See Nichols v. State,* 554 P.2d 231, 232 (Utah 1976).

